487 So.2d 352 (1986)
Christopher A. PALUMBO, Appellant,
v.
The STATE of Florida GAME AND FRESH WATER FISH COMMISSION and the Florida Board of Regents, Appellee.
No. BE-82.
District Court of Appeal of Florida, First District.
April 9, 1986.
*353 James P. Jamieson and Philip Bartow, Gainesville, for appellant.
Jerrold K. Phillips, Tallahassee, for appellee.
THOMPSON, Judge.
Christopher A. Palumbo appeals an order granting a motion for summary judgment in favor of defendants-appellees in Palumbo's negligence action for injuries received when he was attacked by an alligator while swimming at a recreational park operated by appellees. We affirm.
The incident giving rise to this litigation occurred at a University of Florida recreational park known as Lake Wauberg. Appellant, a University of Florida student, had been visiting the park for recreational purposes since his arrival at the university some three years prior to the attack. On the day in question, appellant arrived at the park, presented his student ID card at the check-in shed at the entrance to the park, and proceeded to the boat ramp to meet three of his friends. Appellant had intended to go sailing, but upon arrival he noticed that the two sailboats available had already been taken out onto the lake. He also noticed that one of the boats had capsized and appeared to have its mast stuck in the mud. He decided to swim out to the capsized boat in order to help the occupants right it, and simply for some exercise. During his swim from the boat launch area, he was attacked and severely injured by an alligator.
In the order granting summary judgment, the trial court recited two bases for granting the motion:
1. The failure of the defendants to fence, block or otherwise prevent alligators from moving from Paynes Prarie State Park to adjoining Lake Wauberg and to provide an adequate number of lifeguards to serve as alligator spotters are clear discretionary decisions... .
2. The plaintiff's total disregard of the clear warnings and regulations present at the facility was the sole proximate cause of his injury.
We agree that the trial judge correctly granted summary judgment in favor of appellees. The law of Florida does not require the owner or possessor of land to anticipate the presence of or to guard an invitee or trespasser against harm from wild animals unless one of two conditions exists: the animal has been reduced to possession, or the animal is not indigenous to the locality but has been introduced onto the premises. Appellees had not reduced the alligator to possession before the attack, and since alligators are indigenous to Florida, appellees were not required to have the alligator under dominion and control.
In regard to the trial court's application of the sovereign immunity defense, we observe that the Supreme Court of Florida, in City of St. Petersburg v. Collom, 419 So.2d 1082 (Fla. 1982), held that when a *354 governmental entity creates a known dangerous condition, which is not readily apparent to persons who could be injured by the condition, an operational duty arises to warn or protect the public from the known danger. Here, appellees clearly did not create the dangerous condition, i.e., the presence of the alligator, and we agree with the trial court that liability against appellees may not be predicated upon their decision, clearly discretionary and judgmental, of whether to fence, block or otherwise prevent alligators from moving from Paynes Prairie State Park to adjoining Lake Wauberg, if indeed it would have been possible to do so. Such preventive measures as appellant's allegations envision would be discretionary under the holding of Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010 (Fla. 1979), thereby affording protection to appellees under the doctrine of sovereign immunity.
It is clear, however, that once the university undertook to open and operate the recreational facility (with or without the assistance of the Game and Fresh Water Fish Commission), it would be held to the same standards of care as are applied to private persons operating similar facilities. Trianon Park Condominium Association, Inc. v. City of Hialeah, 468 So.2d 912 (Fla. 1985).
We also agree with the trial court's finding that appellant's total disregard of the clear warning signs present at the facility was the sole proximate cause of his injury. A sign posted at the boat launch area where appellant entered the water read "No Swimming Allowed." Signs posted around the park making reference to alligators included a Game and Fresh Water Fish Commission poster attached to the gate attendant's booth at the entrance to the park; a sign located near the swimming dock on another part of the lake; and another sign located near one of the boathouse docks. The latter two signs read "Unlawful To Feed Alligators." The Game and Fresh Water Fish Commission poster read "Don't Feed Or Molest ...," and showed a picture of a large alligator. The poster also contained wording discussing the dangers involved in feeding or molesting alligators. Other signs in the park area contained, among others, the following swimming and boating regulations:
(1) Swim only within float boundaries.
(2) No swimming under dock or floats.
(3) Swim only when guard is on duty.
(4) No boating in or adjacent to the swimming area.
(5) No swimming from the boats or canoes.
In Dougherty v. Hernando County, 419 So.2d 679 (Fla. 5th DCA 1982), pet. for rev. denied, 429 So.2d 5 (Fla. 1983), the court held that no duty was owed to a trespasser who dove from a bridge containing "no diving" signs. The court held that the plaintiff in that case, who had dived from the bridge some 200 to 300 times previously, was fully aware of the hazards involved. We find no reason to apply a different rule here. In this case, it is uncontroverted that appellant had been visiting the park for recreational purposes since his arrival at the university some three years prior to this occasion and that he had made 25 or more visits prior to the day on which his injury occurred. He noticed the signs posted at the park, but said he never read them. Nevertheless, appellees, as operators of the park, were entitled to assume that appellant would perceive that which would be obvious to him upon the ordinary use of his senses. There was no showing that the alligator warning signs that were present, coupled with the "No Swimming Allowed" signs, were insufficient to fulfill any duty to warn appellant and others using the park. Furthermore, the record clearly establishes that no accidents of this kind had taken place in the park previously. A party cannot close his eyes and his mind and thereby impose liability on another when there would otherwise be none.
The judgment appealed from is therefore AFFIRMED.
MILLS, J., concurs.
SMITH, J., dissents with opinion.
*355 SMITH, Judge, dissenting.
I would reverse. The court on motion for summary judgment is confined to ruling on uncontradicted evidence, and cannot weigh the evidence to arrive at factual conclusions. City of Live Oak v. Arnold, 468 So.2d 410 (Fla. 1st DCA 1985).
The evidence before the trial court here discloses that guests of the park frequently entered the water while boating, and engaged in swimming activities at places other than the designated swimming area, including the boat ramp at which appellant entered the water. "Evidence of the continued and general customs of the patrons of a place of business is admissible on the issue of the nature of the use and the extent of the premises covered by the implied invitation." 41 Fla.Jur.2d, Premises Liability, § 61, n. 55, citing McKinney v. Adams, 68 Fla. 208, 66 So. 988 (1914).
There was testimony from a former caretaker of the Lake Wauberg park area that the "No Swimming Allowed" sign at the boat ramp was placed there to prevent interference with and possible injury from the launching of boats, and appellant testified that he assumed that was its purpose. Appellant, an out-of-state student, also testified that he was not aware of the existence of alligators in the lake, nor of any dangers from alligators while swimming. On the other hand, there was evidence that both appellees were fully aware of the presence of alligators in the lake, of the dangers to persons using the lake, and that appellees in fact had an on-going "alligator removal" program whereby alligators were removed from the lake from time to time when they became a problem.
Even if appellant should be considered a "known trespasser," appellant urges, citing Wood v. Camp, 284 So.2d 691 (Fla. 1973), appellee's had at the least the duty to warn him of the specific danger of encountering alligators while swimming, which danger was admittedly known to appellees, but which was not known to appellant (according to his sworn testimony), nor open to ordinary observation by him. See, City of Pensacola v. Stamm, 448 So.2d 39 (Fla. 1st DCA 1984).
I recognize that a close case is presented on these facts, and that a trial judge might properly direct a verdict for appellees after hearing the evidence at a trial. In my opinion, however, summary judgment was premature in view of the conflicting evidence and reasonable inferences that might be drawn therefrom on the issues of the extent of the duty owed to appellant under the circumstances, negligence or the absence thereof on the part of appellees, and of course, the extent of the negligence of appellant which must be weighed in determining his right to recover, as well as the extent of any recovery permitted.