[No. E006398. Fourth Dist., Div. Two. Oct. 31, 1989.]

DAVID BRUNELLE, Plaintiff and Appellant, v.
ANTHONY SIGNORE, Defendant and Respondent.

**COUNSEL**

Charles M. Finkel for Plaintiff and Appellant.

Tuverson & Hillyard and Shawn Robertson for Defendant and Respondent.

## OPINION

**THE COURT.**\*—Plaintiff David Brunelle has appealed from a judgment · entered following the trial court's granting of defendant's (Anthony Signore's) motion for summary judgment. On appeal, plaintiff contends that the trial court abused its discretion in granting summary judgment in favor of defendant. He argues that the questions of foreseeability and reasonableness of defendant's actions are questions of fact for the jury to decide. After consideration of the factors discussed in *Rowland* v. *Christian* (1968) 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496], we have determined that defendant owed no duty of care to plaintiff to prevent his injury as a result of a spider bite, where (1) as a matter of law, injury to the plaintiff was unforeseeable by defendant, owner of a private residence; (2) the burden to the homeowner of preventing injury would be great; and (3) the task of defining the scope of the duty and the measures required of the homeowners would be extremely difficult. Therefore, we shall affirm the judgment.

### FACTS AND PROCEDURAL HISTORY

In September 1986, plaintiff spent the weekend at defendant's vacation home in Cathedral City, a structure which abutted the desert. During the weekend, plaintiff was bitten by a brown recluse spider.[1] As a result of the spider bite, plaintiff was severely injured: The venom released by the spider bite destroyed tissue in plaintiff's right foot, his foot was swollen, infected and had ulcerated lesions. Within 24 hours plaintiff was unable to walk or even stand as a result of swelling and intense pain. Because of the severity of his injury, plaintiff was required to take a two-month medical leave from his work. He then returned to work part-time in a wheelchair for almost two months, before resuming work on a full-time basis. Approximately 18 months after the bite, plaintiff described his foot as being totally fatigued after a day at the office, and stated that dress shoes aggravated his foot and caused swelling and discomfort.

Plaintiff filed a complaint for damages for personal injuries, alleging that defendant negligently "entrust[ed], permitt[ed], manag[ed], maintain[ed], servic[ed], repair[ed], inspect[ed], test[ed], controll[ed] and operat[ed] [his] property," and failed to warn plaintiff regarding the property's safe use, and thus caused "his property to be in a dangerous condition . . ." which proximately caused plaintiff's injuries.

---

\* Before McDaniel, Acting P. J., Dabney, J., and Hollenhorst, J.

[1] The brown recluse spider is a relatively small, tan to brown spider, which, with its legs extended, is approximately the size of a half dollar. It can be easily identified by a violin- or fiddle-shaped marking on its back.

Before filing an answer, defendant filed his motion for summary judgment. In support of his motion, defendant argued that: (1) he acted as a reasonably prudent person would under the same or similar circumstances; and (2) an owner of premises is not liable for injuries suffered as a result of a dangerous condition of which he has no knowlege. In support of these arguments, defendant submitted a statement of undisputed material facts, stating: (1) "plaintiff was bitten by a brown recluse spider"; (2) plaintiff had not at any time seen a brown recluse spider on defendant's property; (3) "plaintiff did not see any spiders" in defendant's house the night he was bitten; (4) "defendant has never seen anything around his house that looked like a brown recluse spider"; (5) "defendant was unaware that brown recluse spiders were in the California area"; (6) defendant had not seen a black widow spider in his house before plaintiff was bitten by a spider; (7) "defendant removed the spiders he found inside his house"; (8) "defendant sprayed the entire inside and outside of his property to get rid of the bugs"; and (9) "defendant did not see any insects in his home during the 4 months" before plaintiff was bitten by a brown recluse spider.

In support of his motion, defendant submitted excerpts from plaintiff's responses to interrogatories and from his (defendant's) deposition testimony.

In his opposition, plaintiff argued that foreseeability and whether defendant exercised reasonable care to prevent plaintiff's injury were questions of fact for the trier of fact to determine. In support of his response, plaintiff submitted objections to defendant's statement of undisputed facts and his own statement of undisputed facts. Plaintiff objected to defendant's facts Nos. 5, 8, and 9, *ante,* arguing that statements Nos. 5 and 9 were contrary to the facts and statement No. 8 was misleading when compared to defendant's deposition testimony. Plaintiff also filed a separate statement of undisputed facts, in which he listed 20 undisputed facts.[2] In support of these facts, plaintiff submitted excerpts from defendant's deposition testimony to show that defendant had knowledge that brown recluse spiders were prevalent in rocky areas of the United States and were "found in storage areas such as closets and also clothing that has been put away or not worn recently."

The trial court granted defendant's motion for summary judgment, and plaintiff then appealed from the judgment entered in defendant's favor.

Additional matters reflected by the record and pertinent specific issues raised by this appeal are set forth in the discussion that follows.

---

[2] For a list of appellant's 20 undisputed facts, refer to appendix A, *post*, pages 132-133.

## DISCUSSION

Plaintiff contends that the trial court abused its discretion in granting defendant's motion for summary judgment. More specifically, he argues that the questions of foreseeability and reasonableness of defendant's actions are questions of fact for the jury to decide. Defendant argues, however, as a matter of law, that he owed no duty of care to plaintiff with reference to the risk to which plaintiff was exposed. We agree with defendant.

In any action or proceeding, a party may move for summary judgment "if it is contended that the action has no merit or that there is no defense thereto." (Code Civ. Proc., § 437c, subd. (a).) The motion determines whether "there are any triable issues of material fact, or whether the moving party is entitled to judgment as a matter of law. [Citation.]" (*Powell v. Standard Brands Paint Co.* (1985) 166 Cal.App.3d 357, 361-362 [212 Cal.Rptr. 395].) Where the defendant moves for summary judgment, he must either disprove at least one essential element of every cause of action in the plaintiff's complaint or prove an affirmative defense that would bar every cause of action in the complaint. (*Conn* v. *National Can Corp.* (1981) 124 Cal.App.3d 630, 637-639 [177 Cal.Rptr. 445].)

The trial court properly grants summary judgment "only when the evidence in support of the moving party establishes that there is no issue of fact to be tried. [Citations.]" (*Lee* v. *Electric Motor Division* (1985) 169 Cal.App.3d 375, 381 [215 Cal.Rptr. 195].) Only after it has determined that the moving defendant's declarations, "'considered in light of the issues raised by the pleadings together with the admissions and affirmative allegations set forth in the pleadings of the plaintiff would, standing alone support the summary judgment motion does the court look to any counteraffidavits and counterdeclarations.'" (*Conn* v. *National Can Corp., supra,* 124 Cal.App.3d at p. 639; quoting *Residents of Beverly Glen, Inc.* v. *City of Los Angeles* (1973) 34 Cal.App.3d 117, 127 [109 Cal.Rptr. 724].)

In order to maintain an action for negligence, plaintiff must be able to show that: (1) defendant owed a legal duty of care; (2) he breached that duty; and (3) defendant's breach was the proximate or legal cause of plaintiff's injury. (*Peter W.* v. *San Francisco Unified Sch. Dist.* (1976) 60 Cal.App.3d 814, 820 [131 Cal.Rptr. 854]; 6 Witkin, Summary of Cal. Law (9th ed. 1988) § 732, p. 60.) Thus, in order to determine whether the trial court properly granted summary judgment in this case, we must first consider whether defendant owed plaintiff a duty of care to protect plaintiff from or prevent plaintiff's injury as a result of a spider bite in defendant's home.

■ The general rule in California is that all persons have a duty " 'to use ordinary care to prevent others being injured as a result of their conduct.' [Citations.]" (*Rowland* v. *Christian, supra,* 69 Cal.2d 108, 112; Civ. Code, § 1714; see *Ballard* v. *Uribe* (1986) 41 Cal.3d 564, 572, fn. 6 [224 Cal.Rptr. 664, 715 P.2d 624].)

As explained by the California Supreme Court, " 'duty' is not an immutable fact of nature ' "but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection." ' " (*Ballard* v. *Uribe, supra,* 41 Cal.3d at p. 572, fn. 6, citations omitted.) Whether a duty of care exists "is a question of law to be determined on a case-by-case basis." (*Isaacs* v. *Huntington Memorial Hospital* (1985) 38 Cal.3d 112, 124 [211 Cal.Rptr. 356, 695 P.2d 653].)

In making its determination, the court must weigh several factors: "[T]he foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved. [Citations.]" (*Rowland* v. *Christian, supra,* 69 Cal.2d at p. 113; *Isaacs* v. *Huntington Memorial Hospital, supra,* 38 Cal.3d at pp. 124-125.)

Plaintiff has not cited nor has our research revealed any California case that discusses the issue of whether an owner or occupier of a *residence, a business or a hotel/motel* may be held liable for plaintiff's injury as a result of an insect or spider bite sustained on the premises. Our research has also failed to reveal any case in any jurisidiction within the United States in which an owner or occupier of a *private residence* was held liable for injuries sustained as a result of an insect or spider bite. In addition, we note that the very few out-of-state cases which have considered the issue of whether a *owner of a business or a hotel/motel* may be held liable for injury sustained as a result of an insect bite have split on the issue.[3] Only one of those,

---

[3] As stated, out-of-state cases are split on the issue of liability of businesses and/or hotels/motels for injury sustained as a result of insect bites:

Yes: *Brasseaux* v. *Stand-By Corp.* (La.App. 1981) 402 So.2d 140, certiorari denied (La. 1981) 409 So.2d 617 [motel held liable for injury caused when plaintiff slipped and fell in shower while trying to avoid being stung by bees coming out of shower head, defendant's liability based on facts that defendant knew bees were outside motel, had hired beekeeper to remove bees, and failed to warn plaintiff of bees near his room]; *CeBuzz, Inc.* v. *Sniderman* (1970) 171 Colo. 246 [466 P.2d 457] [grocery store liable for injury as result of spider bite where same type of insect seen a few days earlier and no evidence of effort to protect or prevent].

*Rhodes* v. *B.C. Moore & Sons, Inc., supra,* 153 Ga.App. 106 [264 S.E.2d 500], discussed the question of duty. The *Rhodes* court concluded that in the absence of knowledge of such a danger, i.e., the presence of or imminent attack by a flying, stinging insect, there was no duty on the part of the proprietor to take specific steps to prevent the injury by a bee or yellow jacket. (*Id.,* at p. 501.)

■ Our consideration of the *Rowland* factors leads us to the conclusion in this case that an owner or occupier of a private residence does not have a duty to protect or prevent bites from harmful insects where: (1) it is not generally known that the specific insect is indigenous to the area; (2) the homeowner has no knowledge that a specific harmful insect is prevalent in the area where his residence is located; (3) the homeowner has on no occasion seen the specific type of harmful insect either outside or inside his home; and (4) neither the homeowner nor the injured guest has seen the specific insect that bit the guest either before or after the bite occurred.[4] To impose a duty under these circumstances, where the owner or occupier of the premises had no reason to anticipate or guard against such an occurrence would be unfair and against public policy. Imposition of a duty even in those cases where the homeowner shared general knowledge with the public at large that a specific harmful insect was prevalent in the area but the homeowner had not seen the specific harmful insect either outside or inside his home would impose a duty on the owner or occupier of the premises that would also be unfair and against public policy.[5] In either of

---

No: *Rhodes* v. *B. C. Moore & Sons, Inc.* (1980) 153 Ga.App. 106 [264 S.E.2d 500] [retail store not liable for insect bite, court found no actionable negligence for bee sting or insect bite where defendant could not have discovered and prevented condition or circumstances, no duty in absence of knowledge]; *Cunningham* v. *Neil House Hotel Co.* (Ohio App. 1940) 33 N.E.2d 859 [no liability for insect sting, negligence cannot be presumed, defendant had no knowledge of presence of particular insect, insect that stung plaintiff never seen nor identified by anyone].

[4] No evidence was presented here that the brown recluse spider is indigenous to the desert area near Cathedral City, California. Evidence was presented to show only that the brown recluse spider is prevalent in "rocky areas of the United States." (See appen. A, plaintiff's undisputed facts, fact No. 5.) Plaintiff submitted no evidence to show that the desert area near Cathedral City is such a "rocky area." Although evidence was presented that the defendant had knowledge that the brown recluse spider was prevalent in the rocky areas of the United States, none was submitted to show defendant was aware that the brown recluse spider was prevalent in the Cathedral City area.

[5] In addition, there is some support for the conclusion that a landowner has no duty to protect against attacks by indigenous animals or insects. As noted by the Court of Appeals of Georgia " 'Generally, the law does not require the owner or possessor of land to anticipate [the] presence of, or guard [an] invitee against harm from animals ferae naturae.' [Citations.]" (*Williams* v. *Gibbs* (1971) 123 Ga.App. 677, 678 [182 S.E.2d 164, 165].) Although there are no California cases which consider the issue, we note that the Restatement Second of Torts provides that an owner or occupier of land is not normally liable for injury to others as a result of an attack by a wild animal indigenous to the area, even where the owner or occupier kept the animal and it later escaped. (Rest.2d Torts, § 508 [keeper of wild animal has

these instances, the burden on the landowner would be enormous and would border on establishing an absolute liability. Further, the task of defining the duty and the measures required of the owner or occupier of private residences to meet that duty would be difficult in the extreme.

Plaintiff argues that defendant had knowledge there were other dangerous insects, i.e., black widow spiders and scorpions, on his property and thus should have taken precautions and/or warned plaintiff against the danger. This argument is not persuasive.

An analogous situation was presented to the court in *7735 Hollywood Blvd. Venture v. Superior Court* (1981) 116 Cal.App.3d 901 [172 Cal.Rptr. 528]. In *7735 Hollywood Blvd. Venture* plaintiff was raped by an intruder who forced his way into her apartment. The plaintiff maintained that defendant's liability rested on two factors: knowledge that violent crime had occurred in the general area and defendant's negligent failure to replace a burned out light outside plaintiff's apartment. In determining that the landlord was not liable for plaintiff's injuries, the court in *7735 Hollywood Blvd. Venture* stated that general knowledge of risks in the neighborhood is not enough to put the landlord on notice that such incidents might occur on the particular property. In addition, the court noted that imposition of an affirmative duty to install security devices adequate to deter crime, such as adequate lighting, would result in the imposition of a duty impossible of definition. (*Id.,* at p. 905; see *Noble v. Los Angeles Dodgers, Inc.* (1985) 168 Cal.App.3d 912, 914-918 [214 Cal.Rptr. 395]; *Gregorian v. National Convenience Stores, Inc.* (1985) 174 Cal.App.3d 944, 948-949 [220 Cal.Rptr. 302].)

Here plaintiff urges imposition of a duty because defendant had general knowledge of the prevalence of other harmful insects around his home and also urges that defendant had a duty to use a professional exterminator and/or exterminate his house himself "more frequently" and also to hire a professional cleaning person or persons to clean defendant's home when he (defendant) was not in residence. However, that foreseeability which an owner or occupier of a residence shares with the public at large does not, per se, impose a duty on such owner or occupier to procure professional exterminators and/or cleaning crews to "de-bug" his residence, inside and out, on a periodic basis. An owner or occupier of property is not

no duty for injury of wild animal attack where animal breaks free from confinement, if animal indigenous to the area]; see also *Palumbo v. Game & Fresh Water Fish Com'n* (Fla.App. 1986) 487 So.2d 352 [the court held that summary judgment was proper, stating that an owner or possessor of land is not liable for injury from wild animals (alligators) where he had not reduced the animal to possession before the attack and the animal was indigenous to the area].

an insurer of the safety of persons on the premises. (*7735 Hollywood Blvd. Venture, supra*, 116 Cal.App.3d at p. 905.) His responsibility is not absolute, or based on a duty to keep the premises absolutely safe. (*Coggins* v. *Hanchette* (1959) 52 Cal.2d 67, 74 [338 P.2d 379].) The law does not impose a duty of extraordinary care. Imposition of such a duty here, as in *7735 Hollywood Blvd. Venture,* would impose an intolerable burden on homeowners and would in effect impose an absolute liability on the homeowner for injuries caused by insect or spider bites on their premises.

For the reasons stated, we conclude that defendant, as a matter of law, had no duty to protect against the risk that plaintiff would sustain injury as a result of a spider bite.

Because we have determined that defendant had no duty to protect against the risk in this case, the duty element of plaintiff's cause of action for negligence is absent. (*Conn* v. *National Can Corp., supra,* 124 Cal.App.3d at p. 639.) Therefore, the trial court correctly determined that defendant was entitled to judgment as a matter of law. (*Ibid.*; *Powell* v. *Standard Brands Paint Co., supra,* 166 Cal.App.3d at pp. 362, 366-367.)

DISPOSITION

The judgment is affirmed.

APPENDIX A

"1.    Defendant Anthony Signore has been employed by Hilton Hotels for 13 years. For five of those years he has been a claims manager coordinating and handling Hilton's self-insured claims program. (Deposition of Anthony Signore, page 7, line 8-19.)

"2.    Before the incident involving plaintiff, defendant Anthony Signore worked on a claim for Hilton Hotels involving a Brown Recluse spider bite. (Deposition of Anthony Signore, page 30 through 37.)

"3.    Defendant Anthony Signore had read written materials concerning Brown Recluse spiders and provided those materials to plaintiff. (Deposition of Anthony Signore, page 31 and 32 line 6-13.)

"4.    As part of his job duties, defendant Anthony Signore had read the materials provided to him concerning Brown Recluse spiders before the incident at his home involving plaintiff. (Deposition of Anthony Signore, page 33, 34 line 10-12.)

"5.    Defendant Anthony Signore was aware that Brown Recluse spiders were prevalent in rocky areas of the United States. (Deposition of Anthony Signore, page 34 line 20-21.)

"6.    Plaintiff was bitten by a Brown Recluse spider. (Deposition of Anthony Signore, page 34 line 20-25; page 35, line 1-3; page 23, line 18-22.)

"7.    Before this incident, defendant Anthony Signore was aware that Brown Recluse spiders are found in storage areas such as closets and also clothing that has been put away or not worn recently. (Deposition of Anthony Signore, page 30-37; Exhibit 1 to deposition of Anthony Signore.)

"8.    At no point in time before this incident did defendant Anthony Signore utilize an extermination service. (Deposition of Anthony Signore, page 7, line 6-7.)

"9.    Before this incident, defendant Anthony Signore had owned the home in which this incident occurred for at least nine months. (Deposition of Anthony Signore, page 12, line 19-20.)

"10.    Before this incident, defendant Anthony Signore was aware that spiders or other insects that might cause harmful bites existed in the Palm Springs area. (Deposition of Anthony Signore, page 16, line 19-25; page 17, line 1-12.)

"11.    Defendant Anthony Signore was aware of black widow spiders and scorpions being prevalent around his house, in his gargage and in his back yard constantly. (Deposition of Anthony Signore, page 16, line 25; page 17, line 1-12.)

"12.    The last time defendant Anthony Signore used any type of insecticide in or around his house was during the month of May before plaintiff's September incident. (Deposition of Anthony Signore, page 19, line 12-23.)

"13.    Defendant Anthony Signore was aware that scorpions and black widow spiders continued to come back around his home yet he never considered using a professional extermination service. (Deposition of Anthony Signore, page 19, line 21-25; page 20, line 1-9.)

"14.    Defendant Anthony Signore saw "regular" spiders inside his home and he just dusted them away rather than exterminate them. (Deposition of Anthony Signore, page 21, line 22-25; page 22, line 1-5.)

"15.    Defendant Anthony Signore's home was built right into the desert. (Deposition of Anthony Signore, page 20, line 13-15.)

"16.    Defendant believes the Brown Recluse spider bite took place in his home. (Deposition of Anthony Signore, page 23, line 18-25; page 24, line 1-3.)

"17.    The outdoor furniture used around the pool at defendant's home had been stored in the den where plaintiff was sleeping. (Deposition of Anthony Signore, page 24, line 4-25; page 25, line 1-6.)

"18.    Defendant Anthony Signore allowed plaintiff to sleep only about 6 or 7 inches above the floor. (Deposition of Anthony Signore, page 25, line 7-9.)

"19.    Defendant Anthony Signore utilized no cleaning service during the weekdays that he was not in the house. (Deposition of Anthony Signore, page 25, line 16-22.)

"20.   Defendant Anthony Signore allowed plaintiff to sleep 6 to 7 inches above the floor in a room in which outdoor furniture had been stored with the sliding glass door to the outside open. (Deposition of Anthony Signore, page 26, line 1-9.)"