891 So.2d 1039 (2004)
ST. JOSEPH'S HOSPITAL, a Florida corporation, Appellant/Cross-Appellee,
v.
Anthony COWART and Terry Cowart, husband and wife, Appellees/Cross-Appellants.
No. 2D03-893.
District Court of Appeal of Florida, Second District.
September 10, 2004.
Rehearing Denied October 21, 2004.
*1040 Tricia B. Valles of Hahn, Morgan & Lamb, P.A., Tampa, for Appellant/Cross-Appellee.
Theresa I. Wigginton, Brandon, for Appellees/Cross-Appellants.
NORTHCUTT, Judge.
A black widow spider bit Anthony Cowart while Cowart was a patient at the St. Joseph's Hospital emergency room. Cowart and his wife, Terry, sued the hospital, seeking compensation for the bite under theories of ordinary negligence, negligent infliction of emotional distress, and loss of consortium. A jury awarded damages under each of these theories. St. Joseph's appeals, contending that, as a matter of law, it was not liable to the Cowarts. We agree and reverse. Our reversal moots the issue on cross-appeal, in which the Cowarts claim the trial court erred in denying their motion for attorney's fees based on an offer of judgment.

NEGLIGENCE
An ambulance brought Cowart to the emergency room after he sustained minor injuries in an automobile accident. Dr. Castellucci, the emergency room physician, ordered x-rays. Cowart donned a hospital gown and was placed on the x-ray table. He felt what seemed like flea bites. When he told the technician that he had been bitten by fleas, the technician laughed, as if Cowart were joking. After the x-ray, Cowart did not feel anything crawling on his body.
When Cowart returned to the emergency room, he showed Castellucci a mark near his left rib cage, but did not say he believed he had been bitten. Castellucci speculated that the mark might indicate seat belt trauma and ordered a CT scan. During the hour and a half that Cowart waited to be tested, he did not notice any biting or crawling.
While the CT scan was taking place, Cowart again felt something biting him. When he emerged from the scanner, he reached inside his gown, pulled out a black widow spider, and threw it on the floor. He immediately returned to the emergency room, where Castellucci began treatment for the bite.
Cowart's negligence claim was essentially a premises liability action against the landowner-hospital by a business invitee. A landowner owes two duties to a business invitee: (1) to use reasonable care in maintaining its premises in a reasonably safe condition; and (2) to give the invitee warning of concealed perils that are or should be known to the landowner and that are unknown to the invitee and cannot be discovered through the exercise of due care. Knight v. Waltman, 774 So.2d 731, 733 (Fla. 2d DCA 2000); Emmons v. Baptist Hosp., 478 So.2d 440, 442 (Fla. 1st DCA 1985). Cowart asserted that the hospital breached both duties.[1]
*1041 We first address the duty to maintain the hospital in a reasonably safe condition. This duty required the hospital to exercise ordinary care. Emmons, 478 So.2d at 442. A landowner is not an insurer of his business invitee's safety, and the mere occurrence of an accident does not give rise to an inference of negligence. Cassel v. Price, 396 So.2d 258, 264 (Fla. 1st DCA 1981).
No Florida cases specifically address a premises liability action based on a spider or insect bite. Generally, Florida law holds that landowners do not have a duty to guard an invitee against harm from wild animals, except in certain circumstances not applicable here. See Wamser v. City of St. Petersburg, 339 So.2d 244 (Fla. 2d DCA 1976) (addressing a shark attack in the waters off one of the city's beaches); Palumbo v. State Game & Fresh Water Fish Comm'n, 487 So.2d 352 (Fla. 1st DCA 1986) (concerning an alligator attack at a lake). Both these cases, however, involved injuries from an animal attack that took place in the animal's natural habitat. We agree with the Texas Court of Appeals that a landowner could owe a duty with regard to wild animals found inside an artificial structure, such as the hospital here. See Nicholson v. Smith, 986 S.W.2d 54, 63-64 (Tex.Ct.App.1999) (and cases cited therein). But see Brunelle v. Signore, 215 Cal.App.3d 122, 263 Cal.Rptr. 415, 416 (1989) (holding that, as a matter of law, homeowner owed no duty to invitee to prevent injury as a result of a spider bite).
Even so, the evidence in this case did not show that St. Joseph's breached its duty of ordinary care. A technician from the hospital's pest control company opined that spiders cannot be stopped from entering buildings in the Tampa area. John Anderson, Cowart's expert entomologist, testified that black widow spiders are native to Florida and can be found inside buildings. Anderson said that spiders could be excluded from a structure by completely isolating it from the outside world. But he agreed that such measures would be impossible in a hospital that is open to the public. Cf. Booth v. Arizona, 207 Ariz. 61, 83 P.3d 61, 64 (Ct.App.2004) (upholding jury verdict of negligence for injuries sustained when a car hit an elk lying in a roadway; plaintiffs introduced evidence that the State had implemented measures to reduce collisions between vehicles and elk on other Arizona roadways and that other states had done the same). Because the evidence showed there are no feasible means to prevent black widow spiders from gaining entry to a hospital, any breach of the hospital's duty perforce would be based on its failure to eradicate spiders once they had entered its facility.
St. Joseph's had contracted with a pest control company to provide preventive maintenance and to respond to reports of pests in the hospital. A technician from the company testified he had serviced the hospital for four years. During that time he had never seen a spider infestation of any kind at the hospital, and had never seen a black widow spider there. The hospital also presented an expert who had overseen pest control services for hospitals and was familiar with their pest control needs. He explained that spiders in a hospital are usually an incidental occurrence. He reviewed the hospital's pest sighting logs and stated that the number of spiders reported was not alarming. None of the spiders were described as black widows. The expert opined that the pest control efforts at St. Joseph's were sufficient, reasonable, and similar to programs at other hospitals. He also found the services performed by the hospital's pest control company were appropriate.
*1042 Cowart's expert, Anderson, testified that in his review of the pertinent records he found no reason to believe the hospital had a black widow infestation. Anderson thought that in this case the black widow likely was in the hospital gown before it was given to Cowart. But he did not think the hospital employees should have suspected its presence because, he said, the probability of a spider being in a hospital gown is extremely remote. As Anderson put it, it would take one "rare event," after another "rare event," after another "rare event" for that to occur. He did not feel qualified to discuss the adequacy of the hospital's pest control regimen.
There was no evidence that the pest control company was not performing its services satisfactorily; in fact, the testimony was to the contrary. Cf. Rodgers v. La Quinta Motor Inn, 316 Ark. 644, 873 S.W.2d 551, 551-52 (1994) (affirming summary judgment for landowner in a spider bite case even when plaintiff presented the affidavit of a pest control expert who stated the defendant's application of pesticide was insufficient to control spiders); Copeland v. Lodge Enter., Inc., 4 P.3d 695, 698 (Okla.2000) (reversing summary judgment for landowner when spider bite victim presented evidence that if reasonable care had been exercised in pest control, brown recluse spiders could be eradicated).
In sum, in this case there was no evidence to suggest that the spider entered and remained in the hospital as a result of the hospital's negligence. St. Joseph's simply did not breach its duty to maintain its premises in a reasonably safe condition.
Concerning the second aspect of a landowner's duty, a duty to warn arises only when the landowner's knowledge of the danger is superior to the business invitee's. See Knight, 774 So.2d at 733. Cowart presented no evidence that the hospital knew a black widow spider was on its premises. His own expert testified that the hospital records did not show a black widow spider infestation. In fact, the hospital's pest logs showed no sightings of such a spider. Nothing established that anyone else had ever been bitten by a black widow at the hospital. St. Joseph's had no duty to warn Cowart of a danger of which it had no knowledge.[2]See Wamser, 339 So.2d at 246.
The hospital moved for a directed verdict during trial, and it filed a post-trial motion for judgment notwithstanding the verdict. A motion for directed verdict should be granted if there is no evidence on which a jury could legally base a verdict for damages against the moving party. McElroy v. Perry, 753 So.2d 121, 124 (Fla. 2d DCA 2000); Auto-Owners Ins. Co. v. Hooks, 463 So.2d 468, 473 (Fla. 1st DCA 1985). That was the case here. We reverse the judgment entered against St. Joseph's on this claim and on Mrs. Cowart's claim for loss of consortium. See Albritton v. State Farm Mut. Auto. Ins. Co., 382 So.2d 1267, 1268 (Fla. 2d DCA 1980) (stating that a spouse's derivative claim is barred where the injured spouse's cause of action has been terminated by an adverse judgment on the merits).

NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
The claim for negligent infliction of emotional distress was based on the anxiety, breathing difficulty, and fear of death that Cowart suffered when he learned he *1043 had been bitten by the spider. He also believed that the hospital's employees did not take his condition seriously and that they found his plight entertaining. Additionally, the Cowarts became distressed after they overheard a telephone conversation between Dr. Castellucci and one of his colleagues. Castellucci joked about the irony of Cowart's being admitted to the hospital because of a minor traffic accident and then being bitten by a poisonous spider. Castellucci apologized to Mrs. Cowart. He said he was sorry that he had appeared to take the situation lightly and that he was jesting about the chain of events, not about the bite itself. According to the Cowarts, several other hospital employees, possibly nurses, badgered him about his bite and argued that the spider could not have been in the hospital.
Generally, "before a plaintiff can recover damages for emotional distress caused by the negligence of another, the emotional distress suffered must flow from physical injuries the plaintiff sustained in an impact." R.J. v. Humana of Fla., Inc., 652 So.2d 360, 362 (Fla.1995). Some of Cowart's distress  for example, his anxiety  was attributable to the impact of the spider bite. But as we have observed, he failed to prove that the hospital was negligent in regard to the bite. In the absence of negligence, he could not recover damages for any distress flowing from the bite, either physical or emotional. Mrs. Cowart's derivative consortium claim was barred, as well. See Albritton, 382 So.2d at 1268.
To the extent that both the Cowarts were distressed by the hospital staff's conduct or words, these actions were not accompanied by an impact. As such, those claims were barred by the impact rule. See R.J., 652 So.2d at 362. We reverse the judgment in favor of the Cowarts and remand for entry of judgment for St. Joseph's Hospital. Our disposition renders the issue on cross-appeal moot.
DAVIS and COVINGTON, JJ., concur.
NOTES
[1] The negligence count also alleged that the hospital had a duty to investigate Cowart's initial complaint of a "flea" bite and to examine the inside of his gown. The trial court granted a partial summary judgment in favor of St. Joseph's on these allegations, finding that no such duty existed under the theories pleaded in the complaint. The Cowarts have not cross-appealed this ruling.
[2] Although not actually pleaded in the complaint, Cowart suggests that the hospital employees could have prevented his injury by merely shaking the hospital gown before handing it to him. But as Cowart's own entomologist testified, there was no reason for the employees to suspect the presence of the black widow. As such, their failure to take this preventative measure was not negligent.