Filed 9/24/14  Zenga v. Greenberg Glusker et al. CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| BO ZENGA,<br><br>　　　Plaintiff and Appellant,<br><br>　　v.<br><br>GREENBERG GLUSKER FIELDS<br>CLAMAN & MACHTINGER et al.,<br><br>　　　Defendants and Respondents. | B248318<br><br>(Los Angeles County<br>Super. Ct. Nos. BC316459 &<br>BC316318) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Elihu M. Berle, Judge.  Affirmed.

Dovel & Luner, Gregory S. Dovel and Julien A. Adams for Plaintiff and Appellant.

Jones Day, Brian A. Sun, Jason C. Wright and C. Kevin Marshall, pro hac vice, for Defendants and Respondents Greenberg Glusker Fields Claman & Machtinger and Bert Fields.

Eagan Avenatti, and Jason M. Frank and Ahmed I. Ibrahim for Defendant and Respondent Pacific Bell Telephone Company.

Munger, Tolles & Olson, and Stephen M. Kristovich and Hailyn J. Chen for Defendants and Respondents Samax Enterprises, Inc., and Brad Grey.

_____

This appeal arises from one of the many lawsuits involving the activities of private investigator Anthony Pellicano. Plaintiff and appellant Bo Zenga filed claims against the law firm of Greenberg Glusker Fields, Claman & Machtinger and attorney Bert Fields;[1] the media production company Samax Enterprises, Inc., and producer Brad Grey;[2] and Pacific Bell Telephone Company.[3]

Zenga appeals from the grant of a joint motion for summary judgment filed by Greenberg, Grey and PacBell based on the statute of limitations. We affirm.

## FACTS

### *The Underlying Events*

In 2000, Zenga sued Grey for wrongs related to an alleged producing partnership agreement connected with a motion picture entitled *Scary Movie*. During the course of the *Scary Movie* litigation, Grey and his attorneys (the Greenberg firm) hired Pellicano to investigate Zenga. Pellicano, in turn, illegally wiretapped Zenga's telephones. Events surrounding the wiretapping of Zenga's telephones are discussed in more detail below in addressing the statute of limitations issues.

In 2002 and 2003, federal authorities investigated Pellicano for illegal wiretapping activities. The mainstream and entertainment press widely reported on the investigation. In 2006, authorities indicted Pellicano, and, in 2008, a federal court jury convicted him of multiple counts, including wiretapping, racketeering and wire fraud.

Meanwhile, Zenga's *Scary Movie* lawsuit against Grey continued forward. At a deposition in September 2000, Zenga testified falsely. Grey thereafter discovered the matter, and filed a motion for an order dismissing Zenga's case as a sanction for the false testimony. The trial court denied Grey's motion to dismiss, but ordered Zenga to submit to another deposition session. In March 2001, Zenga repeatedly invoked his rights under the Fifth Amendment, declining to answer hundreds of questions. The trial court

---

[1]     Hereafter collectively Greenberg or the Greenberg firm.

[2]     Hereafter collectively Grey.

[3]     Hereafter PacBell.

2

thereafter ordered Zenga to answer a majority of the questions. When his deposition resumed, Zenga again invoked his Fifth Amendment privilege, and refused to answer almost all of the court-ordered questions. The court subsequently granted Grey's motion in limine to preclude Zenga from testifying at trial of his *Scary Movie* lawsuit. At trial, the court granted Grey's motion for nonsuit based on Zenga's failure to testify. Division Three of our court affirmed the judgment of nonsuit. (See *Zenga et al. v. Brillstein-Grey Entertainment* (Nov. 4, 2003, B159566 [nonpub. opn.].).)

***Zenga's Current Lawsuit***

1.      The Pleadings

In June 2004, Zenga filed a complaint for damages against Pellicano, the City of Los Angeles (specifically alleging claims involving the Los Angeles Police Department (LAPD)), Mark Arneson (a LAPD officer), and Does 1 through 100. Zenga's complaint alleged that the LAPD, through Arneson, disclosed confidential police records about Zenga to Pellicano. Attorney Gregory Dovel represented Zenga at the time the Pellicano-related lawsuit was filed.

In May 2006, Zenga filed a first amended complaint re-alleging the claims noted above, and adding the Greenberg firm, Grey and PacBell. The first amended complaint alleged that Grey retained the Greenberg firm in connection with the *Scary Movie* lawsuit, and that Grey and Greenberg, acting together, hired Pellicano as a private investigator. It alleged that Pellicano wrongly wiretapped Zenga's telephones with the knowledge and consent of Grey and the Greenberg firm, and that Grey and Greenberg accepted and used the fruits of Pellicano's wrongdoing. It further alleged that Pellicano had been able to set up the wiretaps with the complicity of PacBell employees.

In November 2008, Zenga filed his operative third amended complaint. It reiterated the claims against Greenberg, Grey and PacBell noted above; the amendments were mostly directed at the statute of limitations. The third amended complaint alleged three causes of action jointly against Greenberg, Grey and PacBell, listed respectively: (1) invasion of privacy, (2) illegal wiretapping, and (3) negligence, gross negligence, or deliberate wrongdoing in hiring and managing an agent who engaged in unlawful acts.

3

2.     The Motion for Summary Judgment

In October 2012, Greenberg, Grey and PacBell filed a joint motion for summary judgment, or, in the alternative, summary adjudication of issues. The motion was based on the statute of limitations; it argued that Zenga's causes of action had accrued no later than in the first half of 2004, meaning that his lawsuit filed against them in May 2006 had been filed too late. The evidence in support of the motion is discussed below in more detail, but it included undisputed evidence that Zenga began asking questions about the possibility that he had been wiretapped as early as 2001.

In December 2012, Zenga filed an opposition, which was supported by evidence showing his investigation of his suspicions of wiretapping, including the efforts by his attorney, Gregory Dovel. Zenga argued that the accrual of his cause of action was delayed until the period within one year of the time he filed suit against Greenberg, Grey and PacBell because the investigation that he conducted from 2001 through 2006 was reasonable, and did not result in the discovery of facts supporting a cause of action.

3.     The Trial Court's Ruling and Judgment

On December 21, 2012, the parties argued the joint motion for summary relief to the trial court, and the court granted the motion for summary judgment. The court explained that Zenga's arguments in opposition to the statute of limitations failed under both of the discovery rule's bases for beginning the limitations period. The court ruled Zenga *subjectively* suspected he was wiretapped by early 2004 at the latest because Zenga expressly admitted as much. Further, that Zenga *objectively* should have suspected such wrongdoing by no later than early 2004, given what he knew, as well as the information that would have been uncovered by a reasonable investigation based on obvious leads. Specifically, the court noted events concerning two other victims, Warren and Turner, the press reports in 2003-2004, especially the *Times* article mentioning Turner, and a *Vanity Fair* article detailing Pellicano's methods. The court rejected, as conflicting with Supreme Court precedent, Zenga's argument that a plaintiff does not discover his cause of action until he obtains knowledge of specific, hard facts needed to establish the cause of action.

4

On February 20, 2013, the trial court entered judgment in favor of Greenberg, Grey and PacBell, and against Zenga.

Zenga filed a timely notice of appeal.

## DISCUSSION

Zenga contends summary judgment in favor of Greenberg, Grey and PacBell must be reversed because he presented evidence from which a jury could determine that he did not suspect a factual basis for his wire-tapping claims and that he conducted a reasonable investigation but did not find sufficient facts to support filing a lawsuit until a period within one-year of filing suit against the moving defendants. We disagree.

### *Standard of Review for Summary Judgment*

Summary judgment properly is granted if the "affidavits, declarations, admissions, answers to interrogatories, depositions, and matters of which judicial notice shall or may be taken" in support of and in opposition to the motion "show that there is no triable issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Code Civ. Proc., § 437c, subds. (b)(1) & (c).) When it is the defendant who moves for summary judgment, summary judgment is proper if the defendant either proves an affirmative defense or disproves at least one essential element of the plaintiff's cause of action (*Chevron U.S.A,. Inc. v. Superior Court* (1992) 4 Cal.App.4th 544, 548; *Brunelle v. Signore* (1989) 215 Cal.App.3d 122, 127) or if defendant shows that an element of the cause of action cannot be established (Code Civ. Proc., § 437c, subd. (o)(2)). Although the trial court may grant summary judgment on one basis, this court may affirm the judgment under another that was presented by the motion. On appeal, this court examines the facts and independently determines their effect as a matter of law. (*AARTS Productions, Inc. v. Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064-1065.)

### *The Discovery Rule*

A statute of limitations prescribes the period of time past which a plaintiff may not commence a cause of action. (Code Civ. Proc., § 312; *Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 806 (*Fox*).) The starting point for the running of a limitations

5

period is the date of the "accrual of the cause of action." (*Fox, supra*, 35 Cal.4th at p. 806.) As a general rule, the accrual date of a cause of action is "'when the cause of action is complete with all of its elements.'" (*Ibid.*)

To avoid the unfairness that would result from the forfeiture of a cause of action by the expiration of a statute of limitations period before a plaintiff knows it may exist, there is an exception to the general rule of accrual noted above. This exception is known as the "discovery rule." Under the discovery rule, the date for the accrual of a cause of action is delayed "until the plaintiff discovers, or has reason to discover, the cause of action." (*Fox, supra*, 35 Cal.4th at p. 807.) A plaintiff is said to "discover" a cause of action when he or she "*suspects a factual basis*, as opposed to a legal theory, for its elements, *even if he [or she] lacks knowledge thereof . . . .*" (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 397-398 (*Norgart*), italics added, citing *Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1110 (*Jolly*).) A plaintiff is said to have "reason to discover" a cause of action when he or she "*has reason . . . to suspect* a factual basis for its elements." (*Norgart,* at p. 398, italics added.) Thus, the discovery rule establishes two, alternate tests for the date of accrual of a cause of action: (1) a subjective test based on when a plaintiff actually suspected that an injury was caused by wrongdoing; or (2) an objective test based on when a reasonable person would have suspected that an injury was caused by wrongdoing. (See *Kitzig v. Nordquist* (2000) 81 Cal.App.4th 1384, 1391.)

Under either test, it is the suspicion of the existence of the elements of a cause of action that generally will be enough to trigger the accrual date. (*Norgart, supra*, 21 Cal.4th at p. 398, fn. 3; *Jolly, supra*, 44 Cal.3d at p. 1112.) In applying the concept of suspicion, the discovery rule looks to "the 'generic' elements of wrongdoing, causation, and harm." (*Fox, supra*, 35 Cal.4th at p. 807, quoting *Norgart, supra*, 21 Cal.4th at p. 397.) This means that courts "do not take a hypertechnical approach to the application of the discovery rule. Rather than examining whether the plaintiffs suspect facts supporting each specific legal element of a particular cause of action, we look to whether the plaintiffs have reason to at least suspect that a type of wrongdoing has injured them." (*Fox, supra*, 35 Cal.4th at p. 807.)

Subjective or objective suspicion of one or more elements of a cause of action against a particular potential defendant, and thus, the accrual date of the cause of action against that defendant, cannot be avoided by "dilatory tactics." (*Fox, supra*, 35 Cal.4th at p. 807.) To employ the discovery rule to delay the accrual date of a cause of action, a potential plaintiff who suspects that an injury may have been caused by wrongdoing "must conduct a reasonable investigation of all potential causes of [action]." (*Id*. at p. 808.)

In *Fox,* the Supreme Court clarified the issue of how this requirement of a reasonable investigation affects the date of accrual of a cause of action, and articulated this rule: "If such an investigation would have disclosed a factual basis for a cause of action, the statute of limitations begins to run on that cause of action when the investigation would have brought such information to light." (*Fox, supra*, 35 Cal.4th at pp. 808-809.) Given *Fox*'s repeated discussions of the *Norgart* and *Jolly* cases with approval, we believe that *Fox*'s rule must be read as follows: "If such an investigation would have disclosed a *suspected* factual basis for a cause of action, the statute of limitations begins to run on that cause of action when the investigation would have brought such information to light." The unstated, but necessarily implied corollary rule is that, if a reasonable investigation would not have disclosed a suspected factual basis for a cause of action, the statute of limitations does not begin to run. But once a plaintiff suspects or has reason to suspect a factual basis for a cause of action, he or she may not wait to sue until he or she corrals the facts that are "necessary to establish the claim; that is a process contemplated by pretrial discovery." (*Jolly, supra*, 44 Cal.3d at p. 1111.)

*Fox* was a physical injury case alleging harm from a medical device, and arose in the context of a demurrer. In *Fox*, the Supreme Court accepted as true a plaintiff's allegations that she conducted a reasonable investigation after filing a medical malpractice action, but had not found facts to suggest a cause of action existed against the medical device maker until later, when she deposed her doctor. (*Fox, supra*, 35 Cal.4th at p. 811.)

7

The Supreme Court noted that, in a number of opinions in physical injury cases, it had addressed delayed accrual and the discovery rule in the context of summary judgment motions where it was presented with a record of undisputed material facts "for determining when and how the plaintiff discovered an injury, whether the plaintiff conducted a reasonable investigation, when such an investigation would have brought to light the factual basis for a cause of action . . . and whether the plaintiff could have discovered the factual basis for cause of action earlier by exercising reasonable diligence." (*Fox, supra*, 35 Cal.4th at p. 810.)

The court went on to explain "[i]n our previous [physical injury] cases addressing the discovery rule, we affirmed that ignorance of the identity of the defendant does not delay accrual of a cause of action, but that ignorance of a generic element of the cause of action does. (*Norgart, supra*, 21 Cal.4th at p. 399.) Such a distinction certainly exists in the context of a products liability action. Although the identity of the manufacturer-wrongdoer is not an essential element of a products liability cause of action, and therefore ignorance of its identity will not delay the running of the statute of limitations . . . , a plaintiff's ignorance of wrongdoing involving a product's defect will usually delay accrual because such wrongdoing is essential to that cause of action. . . .

"It is therefore consistent with our prior applications of the discovery rule to delay accrual of a products liability cause of action even when a related medical malpractice claim has already accrued, unless the plaintiff has reason to suspect that his or her injury resulted from a defective product. More broadly stated, if a plaintiff's reasonable and diligent investigation discloses only one kind of wrongdoing when the injury was actually caused by tortious conduct of a wholly different sort, the discovery rule postpones accrual of the statute of limitations on the newly discovered claim.

"In both *Jolly* and *Norgart*, the plaintiffs suspected or had reason to suspect that a product had caused their injury. . . . [¶] . . . [¶] . . . *Jolly* and *Norgart* presuppose a situation in which the factual basis for a claim was reasonably discoverable through diligent investigation. In both *Jolly* and *Norgart*, the court emphasized that the plaintiffs had ample reason to suspect the basis of their claims. [Citations.] . . .

8

"[¶] . . . [¶]

"As the allegations in this case illustrate, a diligent plaintiff's investigation may only disclose an action for one type of tort (e.g., medical malpractice) and facts supporting an entirely different type of tort action (e.g., products liability) may, through no fault of the plaintiff, only come to light at a later date. Although both claims seek to redress the same physical injury to the plaintiff, they are based on two distinct types of wrongdoing and should be treated separately in that regard. Accordingly, the . . . rule [articulated in *Bristol-Myers Squibb Co. v. Superior Court* (1995) 32 Cal.App.4th 959] that all claims arising from an injury accrue simultaneously, even if based upon distinct types of wrongdoing, is inconsistent with the generic elements approach prescribed by *Norgart*. . . .

"[¶] . . . [¶]

"It would be contrary to public policy to require plaintiffs to file a lawsuit 'at a time when the evidence available to them failed to indicate a cause of action.' . . ." (*Fox, supra*, 35 Cal.4th at pp. 813-815.)

*Analysis*

Zenga alleges a single type of harm -- an invasion of his privacy, by a single type of wrongful instrumentality -- wiretapping. In other words, unlike *Fox,* we do not have one defendant who allegedly committed one type of wrongdoing and a second defendant who allegedly committed a distinct type of wrongdoing. In Zenga's case, the three defendants are alleged to have been actors in the single type of wrongdoing, as noted, wiretapping. With this foundational perspective in mind, we turn to Zenga's appeal.

1.      Subjective Suspicion

It is undisputed — because it was admitted— that Zenga subjectively suspected, long before mid-2005, that his privacy had been was invaded, and that the instrumentality of the invasion was wiretapping. In responding to defendants' separate statement of facts in support of their motion for summary judgment, Zenga admitted that the following facts were undisputed: Zenga knew, during the time of the *Scary Movie* litigation, that Greenberg and Grey had retained Pellicano. Zenga's attorney "wondered if wiretapping

9

was going on" during the *Scary Movie* litigation, and "took steps to determine whether there was a possibility that some unlawful wiretapping was going on" at that time. Zenga had multiple conversations with different people during 2001 about their suspicions that Pellicano had wiretapped their telephones.

In 2003 and 2004, Zenga had even more conversations with others about being wiretapped. In 2003, Zenga went to the FBI to ask the agency to look into whether he had been wiretapped. Zenga told the FBI that a neighbor had reported to Zenga that someone representing to be from PacBell asked to enter the neighbor's yard to set up phone service to Zenga's home. After hearing the report from his neighbor, Zenga began to hear "weird noises" on his telephone. Zenga read and heard multiple news reports during the 2001-2004 time frame about Pellicano's wiretapping activities. In 2003, Zenga testified before a grand jury that was, as Zenga understood, investigating whether Pellicano had wiretapped telephones, including Zenga's telephone. A Los Angeles Times reporter interviewed Zenga in the fall of 2003 for a story regarding Zenga's suspicion that Pellicano had wiretapped his telephones. The Times article was published in November 2003.

We could go on, but see no need to do so. Zenga's argument on appeal that he offered evidence from which a jury could conclude that he "did not suspect" a factual basis for his wiretapping claims earlier than one year period before he filed his lawsuit simply denies the existence of the undisputed facts in the record. It is undisputed that Zenga *did* suspect a factual basis that he had been the victim of an invasion of privacy by wiretapping well before mid-2005. Indeed, it is undisputed that Zenga actually acted on his suspicions by undertaking efforts to investigate possible wrongdoing.

2.      Objective Suspicion

It is equally undisputed that Zenga objectively should have suspected, long before mid-2005, that his privacy had been invaded, and that the instrumentality of the invasion was wiretapping. Our discussion above applies with equal force here. Any reasonable person faced with the circumstances described above should have suspected he had been the victim of an invasion of privacy by means of wiretapping. We presume that Zenga is

10

a reasonable person, and he actually suspected the harm of an invasion of privacy by wiretapping. Thus, it is undisputed that a reasonable person should have suspected the harm of an invasion of privacy by wiretapping.

### 3. The Effect of Investigation

This leaves the only true issue on appeal which is Zenga's argument that he presented evidence from which a jury could conclude that he conducted a reasonable investigation upon suspecting wiretapping, but did not find sufficient facts to support filing a lawsuit until a period within one-year of filing his current suit against Greenberg, Grey and PacBell. Zenga's evidence on this point largely relied on the deposition of his attorney, Gregory Dovel. Zenga's legal argument was that the accrual date of his cause of action was delayed until he obtained "actual knowledge" that he had been wiretapped.

In accord with the standards for reviewing summary judgment motions, the following facts must be accepted as being true: In April 2005, Zenga's counsel received a letter from the United States Attorney's Office (USAO) requesting that Zenga waive his attorney-client privilege regarding documents in possession of the USAO. Later, Zenga's counsel reviewed the documents to determine whether they contained privileged matter. In May 2005, Zenga's counsel reviewed copies of records summaries prepared by Tarita Virtue, a Pellicano employee, showing telephone calls of Zenga that were intercepted by Pellicano. Zenga first learned that he "was actually wiretapped" by Pellicano when the government unsealed the criminal indictment of Pellicano in early 2006. Prior to that time, Zenga's counsel had contacted phone company representatives, a security expert, the FBI and federal prosecutors in attempts to learn facts showing that Zenga actually was wiretapped, but Zenga's counsel did not "discover a factual basis" for a wiretapping claim.

We agree with Greenberg, Grey and PacBell that Zenga reads too much into *Fox* in relying upon the case to support the proposition that, until a reasonable investigation obtains hard evidence of a cause of action, the cause of action does not accrue. We do not read *Fox* as broadly as does Zenga. *Fox* did not change the Supreme Court's prior

11

discovery rule jurisprudence that the statute of limitations begins to run when a plaintiff "suspects" the "generic" elements of a claim.  (*Fox, supra*, 35 Cal.4th at p. 807.)

Under Zenga's construction of *Fox*, a cause of action does not accrue until a plaintiff conducts a reasonable investigation which finds evidence "to support a cause of action,"  rather than evidence which raises a suspicion of harm caused by a particular type of wrongdoing.  If this is what *Fox* holds, it must be read as a complete overhaul of the Supreme Courts' previous discovery rule jurisprudence, without any indication in *Fox* that this is what the court was doing.  We simply do not read *Fox* to have done as much.

Zenga's construction of *Fox* is at odds with the Supreme Court's decisions in *Jolly* and *Norgart* — neither of which he seriously addresses in his reading of *Fox*.  The problem is that *Fox* addressed an unusual situation of distinguishing the date of accrual of a products liability claim that was tangential to a medical malpractice claim.  *Fox* stands for the simple proposition that the accrual date for each claim must be addressed on its own.  *Fox*, as far as we read it, left the principles articulated in *Jolly* and *Norgart* undisturbed when it comes to addressing a particular claim.

In *Jolly,* the Supreme Court unanimously upheld summary judgment against the plaintiff on the ground of the statute of limitations under the discovery rule, finding that her claim accrued when she suspected a factual basis for her products liability claim.  In *Jolly*, the plaintiff filed her products liability suit in 1981.  The limitations period was one year.  The Supreme Court found that her cause of action accrued by no later than 1978, when she endured surgery for cancer and suspected, that her condition was a result of her mother's ingestion of DES during pregnancy.  (*Jolly, supra*, 44 Cal.3d at p. 1107-1108.) It was not telling that the summary judgment motions disclosed "no conclusive evidence . . . that a reasonable investigation by plaintiff in 1978 would have disclosed *specific proven* facts that would *establish* any wrongful conduct on the part of a DES drug manufacturer." (*Id*. at p. 1108, italics added.)  "In sum, the limitations period begins when the plaintiff suspects, or should suspect, that she has been wronged." (*Id*. at p. 1114.)  The court expressly rejected a formulation of the discovery rule that would take into account the acquisition of evidence to prove a claim:  "A plaintiff need not be aware

12

of the specific 'facts' necessary to establish the claim; that is a process contemplated by pretrial discovery." (*Id*. at p. 1111.) Only "a suspicion of wrongdoing" was needed for the clock to start running. (*Ibid.*)

*Norgart* follows a similar path. There, the plaintiffs sued a drugmaker in 1991 for the death of their daughter in 1985 from a drug overdose. The limitations period was one year. The plaintiff admitted in discovery that, in 1985, they had "thought" there had to be some reason that caused their daughter to commit suicide, and that, by 1986, he had "formed a belief" that somebody "'did something wrong to [his daughter] that caused her to take her own life.'" (*Norgart, supra*, 21 Cal.4th at p. 392.) The court affirmed a grant of summary judgment, ruling that the plaintiffs' claim accrued by at least 1986, because they had admitted to having a suspicion, at that time, that someone had done something wrong to cause their daughter's death. (*Id*. at p. 406, citing *Jolly*.)

We see little difference between *Jolly* and *Norgart* on the one hand, and Zenga's current case on the other hand. The record on appeal here is replete with admissions by Zenga that he suspected wiretapping long before mid-2005. That he did not obtain hard evidence to support those suspicions until later does not mean that the statute of limitations did not accrue long before mid-2005.

We find the trial court did not err when it granted the summary judgment motion filed by Greenberg, Grey and PacBell.

## DISPOSITION

The judgment is affirmed. Respondents are awarded costs on appeal.


BIGELOW, P.J.

We concur:


RUBIN, J.                    GRIMES, J.

13