Filed 6/15/18

**CERTIFIED FOR PUBLICATION**


**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**


| | |
|---|---|
| MICHELE COYLE, | |
| Plaintiff and Appellant, | E066265 |
| v. | (Super.Ct.No. RIC1409402) |
| HISTORIC MISSION INN CORPORATION, | OPINION |
| Defendant and Respondent. | |


APPEAL from the Superior Court of Riverside County. Sunshine S. Sykes, Judge. Reversed.

Esner, Chang & Boyer, Holly N. Boyer and Joseph S. Persoff for Plaintiff and Appellant.

Michelman & Robinson, Robin James; Lewis Brisbois Bisgaard & Smith, David M. Samuels and Roy G. Weatherup for Defendant and Respondent.

Plaintiff and appellant Michele Coyle sued defendant and respondent Historic Mission Inn Corporation (the Mission Inn) for negligence and premises liability. The trial court granted the Mission Inn's motion for summary judgment. (Code Civ. Proc.,

1

§ 473c.) Coyle contends the trial court erred by granting the motion for summary judgment. We reverse the order granting summary judgment.

## FACTUAL AND PROCEDURAL HISTORY

### A. COMPLAINT

The facts in this paragraph are taken from the allegations in Coyle's complaint. On May 8, 2013, Coyle ate lunch with a friend. They ate lunch on a patio at the Mission Inn. During lunch, a spider bit Coyle's back. As a result of the spider bite, Coyle "was hospitalized with numbness and weakness in her extremities due to demyelination in [her] thoracic spine."

In the negligence and premises liability causes of action, Coyle alleged the Mission Inn "knew or should of known that spiders were prevalent in the outside patio area of its restaurants." Coyle asserted the Mission Inn was aware or should have been aware of the risk the spiders posed to patrons. Coyle alleged the Mission Inn was negligent in failing to warn of the danger of the spiders, or in failing to take reasonable care to prevent spiders from coming into contact with patrons. Coyle sought compensatory damages according to proof.

### B. MOTION FOR SUMMARY JUDGMENT

The Mission Inn moved for summary judgment. The Mission Inn asserted Coyle complained of being "bitten by a black widow spider." The Mission Inn asserted, "[A] hotel operator does not have an absolute duty to insure the safety of its guests, and this includes a duty to protect against spider bites." The Mission Inn also contended, it "did not owe [Coyle] a duty to protect her from the alleged black widow spider bite [because

2

s]uch a duty would be unreasonable under the circumstances in this case" due to (1) the Mission Inn following "pest control protocols that exceeded industry standards"; (2) the Mission Inn lacking any knowledge of black widow spiders on its dining patio; and (3) the costs of a duty outweighing the benefits of a duty. Further, the Mission Inn asserted it exercised reasonable care in this case because the Mission Inn "met and exceeded the industry standard of insect inspection and extermination."

C.    OPPOSITION

Coyle opposed the Mission Inn's motion for summary judgment. Coyle asserted that, on May 8, 2013, during lunch, she "removed her over-blouse and placed it either on an empty chair or a low cement wall." Later, while still at lunch, Coyle put on the over-blouse. Coyle then "felt a sharp pain in her right shoulder blade, which began to spasm immediately." Coyle jumped. Coyle's lunch companion asked what was wrong. Coyle said, "'I think I just got bitten by something.'" Coyle iced her shoulder.

The next morning, Coyle's arms, legs, and "core area" were numb. Coyle could not move her arms and legs. Coyle used her nose to call for assistance. Coyle went to the hospital and stayed for approximately six days. "[D]octors diagnosed [Coyle] with paralysis and related the injury to her spine from a spider bite." "Because the spider venom had reached [Coyle's] spinal fluid, [Coyle] is permanently damaged," in that Coyle does not have full function in her left hand and leg.

Coyle asserted that property owners owe a duty of reasonable care in maintaining their properties in a safe condition. Coyle asserted that, prior to May 8, 2013, there were 13 spider sightings reported to the Mission Inn, and three spiders were specifically

3

identified as black widows. Thus, Coyle asserted the Mission Inn had knowledge of spiders, and specifically black widows, being on its property. Coyle contended that because the Mission Inn had knowledge of the black widow spiders, reasonable care required the Mission Inn to (1) warn patrons of, or (2) "take remedial action." Coyle asserted the Mission Inn provided no evidence of warnings related to black widows or of pest control directly targeting black widow spiders.

D.  HEARING

The trial court issued a tentative ruling in which it wrote, "[The Mission Inn] has met [its] initial burden and [Coyle] has failed to establish that the Mission Inn had a duty to protect her from potential insect/spider bites, thus her claims based upon negligence fail."

The trial court held a hearing on the Mission Inn's motion for summary judgment. Coyle argued that (1) the Mission Inn conceded it had a duty to exercise reasonable care toward its patrons, and (2) it is the responsibility of the trier of fact to decide what reasonable care means within the circumstances of this case. Coyle explained that the dispute in the case centers upon what was required by the reasonable care standard, and that was an issue for the jury—what reasonable care means within the facts of this case.

The trial court said the Mission Inn did not concede that it had a duty. The trial court explained that the Mission Inn argued "that there is no existence of a duty as to potential spider bites or insect bites because there was no foreseeability based upon the history of spider sightings, insect sightings as far as pest control is concerned at the

4

Mission Inn." Coyle asked if the trial court was explaining the Mission Inn's argument as asserting (1) there is no duty, or (2) reasonable care in this case did not require any action on the part of the Mission Inn. The trial court said the Mission Inn could explain its argument. The Mission Inn asserted, "[I]t's absolutely correct we are arguing that the issue to be decided by this Court on this motion is the scope or existence of the duty with respect to this spider bite to this woman on the outdoor patio."

The trial court explained, "I don't believe that [Coyle] through [Coyle's] evidence has established that the Mission Inn had a duty, an extended duty to protect her from potential insect or spider bites because there's no evidence that there was ever any type of spiders seen on that patio. There was no evidence that there was any bites from spiders on that patio, and that's really the basis for the Court's ruling in looking at the evidence. I do believe it's a matter of law for the Court to determine whether or not there is, in fact, a duty and how far that duty extends. [¶] In this case, I don't believe there's sufficient evidence that [Coyle] has met [her] burden that the duty itself as a matter of law would extend to the Mission Inn to protect potential customers from this type of bite based upon the evidence that's been presented."

Coyle argued that the issue of what "reasonable care" means in the circumstances of this case should be decided by a jury. The Mission Inn asserted Coyle was mistaking breach for duty. Coyle again asserted the dispute in this case concerns what a reasonable person would have done in the circumstances of this case. Coyle asserted the evidence reflected the Mission Inn did nothing in relation to spiders, so the only

5

question is whether reasonable care, in the circumstances of this case, required some action in relation to the spiders.

The trial court responded, "As far as the evidence that's been presented to this Court, I just don't find that based upon the evidence that was presented that [Coyle] has met [her] burden in establishing that the Mission Inn did have a duty to protect [Coyle] from the occurrence that the potential either insect or spider bite that occurred at the Mission Inn to [Coyle]." The trial court granted the Mission Inn's motion for summary judgment and dismissed Coyle's case with prejudice.

## DISCUSSION

A.     <u>CONTENTION</u>

Coyle contends the trial court erred by granting summary judgment.

B.     <u>LAW AND STANDARD OF REVIEW</u>

" 'A trial court properly grants a motion for summary judgment only if no issues of triable fact appear and the moving party is entitled to judgment as a matter of law. [Citations.] The moving party bears the burden of showing the court that the plaintiff "has not established, and cannot reasonably expect to establish, a prima facie case . . . ." [Citation.]' [Citation.] '[O]nce a moving defendant has "shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established," the burden shifts to the plaintiff to show the existence of a triable issue; to meet that burden, the plaintiff "may not rely upon the mere allegations or denials of its pleadings . . . but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to that cause of action . . . ." ' '

6

" 'On appeal from the granting of a motion of summary judgment, we examine the record de novo, liberally construing the evidence in support of the party opposing summary judgment and resolving doubts concerning the evidence in favor of that party.' " (*Lyle v. Warner Bros. Television Productions* (2006) 38 Cal.4th 264, 274.)

The elements of a negligence cause of action are duty, breach, causation, and damages. (*Ortega v. Kmart Corp.* (2001) 26 Cal.4th 1200, 1205.) Premises liability is comprised of the same elements as negligence. (*Kesner v. Superior Court* (2016) 1 Cal.5th 1132, 1158 (*Kesner*).) In regard to premises liability, "the duty arising from possession and control of property is adherence to the same standard of care that applies in negligence cases." (*Ibid.*)

C.    DUTY

  1.    *EXISTENCE OF A DUTY*

   a.    Law

Whether a duty exists is a question of law for the courts. (*Kesner*, *supra*, 1 Cal.5th at p. 1142.) The general rule concerning duty is "[e]veryone is responsible . . . for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property." (Civ. Code, § 1714, subd. (a).) If a court makes an exception to this general rule by concluding there is no duty, that exception should be based on public policy. (*Kesner*, at p. 1143.)

When a court determines whether public policy favors creating an exception to the general rule that a duty exists, "the most important factors are 'the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the

7

closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.' " (*Kesner*, *supra*, 1 Cal.5th at p. 1143.)

The existence of a duty is a general question. Therefore, we are not focused on the facts of this specific case when determining if a duty exists. (*Kesner*, *supra*, 1 Cal.5th at p. 1144.) A finding that there is no duty means that the court has made " ' "a global determination that, for some overriding policy reason, courts should not entertain causes of action for cases that fall into certain categories," ' even if some defendants in such cases did actually cause the harm of which the plaintiffs complained." (*Kesner*, *supra*, 1 Cal.5th at p. 1154.)

" 'As to foreseeability, . . . the court's task in determining duty "is not to decide whether a particular plaintiff's injury was reasonably foreseeable in light of a particular defendant's conduct, but rather to evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed . . . ." ' " (*Kesner*, *supra*, 1 Cal.5th at p. 1145.) In other words, our foreseeability analysis in the duty context is not case specific. (*Cabral v. Ralphs Grocery Co.* (2011) 51 Cal.4th 764, 773 (*Cabral*).)

For purposes of the duty analysis, " ' "foreseeability is not to be measured by what is more probable than not, but includes whatever is likely enough in the setting of modern life that a reasonably thoughtful [person] would take account of it in guiding practical conduct." . . . [I]t is settled that what is required to be foreseeable is the general character of the event or harm . . . not its precise nature or manner of occurrence.' " (*Kesner*, *supra*, 1 Cal.5th at p. 1145.)

b.      Analysis

The Mission Inn presented evidence that it had employees monitor for pests and insects and report their observations. The Mission Inn then recorded the sightings and gave the report to its pest control company. As will be explained *post*, it is unclear what, if anything, the Mission Inn did in regard to warning patrons about black widows or controlling the black widow population. For example, the pest control company may have recommended the spraying of pesticide targeted at black widows and the Mission Inn may have refused the recommendation.

The general negligent act or omission at issue is the failure to take more action regarding black widow spiders on one's restaurant premises than employees monitoring for pests and then recording the employees' observations. The general harm is a person being bitten by a black widow spider.

It is a matter of common experience and knowledge in this geographical area that black widow spiders are found inside and outside of buildings and that one must be careful to avoid being bitten by a black widow. (See *Kesner*, *supra*, 1 Cal.5th at p. 1146 ["a matter of common experience and knowledge"]; see also *Cabral*, *supra*, 51 Cal.4th

9

at p. 775 ["common experience"].)  Therefore, a reasonably thoughtful restaurant owner would take into account the possibility that black widow spiders may inhabit the restaurant's premises and that those spiders could bite a patron causing injury.  A restaurant owner would reasonably foresee that there would be a risk of a patron being bitten if a restaurant owner did nothing concerning spiders other than record their presence—not providing warnings, not hiring an exterminator, etc.  Thus, the risk that a black widow spider would come into contact with a patron is sufficiently likely that a reasonably thoughtful restaurant owner would take the risk into account when operating a restaurant.

Moreover, at the time Coyle was allegedly bitten by the spider, there were regulations in place concerning insect control at restaurants.  The California Retail Food Code applies to restaurants.  (Health & Saf. Code, §§ 113700, 113789.)  The California Retail Food Code requires that insect control devices should be installed in such a manner as to prevent dead insects from falling into food or onto cooking equipment or linens.  (Health & Saf. Code, § 114259.3.)  Thus, controlling insect populations at restaurants, so as to protect patrons from living and deceased insects, is the type of concern that one would take into account when operating a restaurant.

To look at the duty issue from the opposite angle is perhaps helpful.  If a restaurant were overrun with poisonous spiders, it would be shocking to say the

10

restaurant had no duty whatsoever to protect patrons from the spiders.**1** However, that is what happened in the trial court. The trial court concluded that a restaurant has no duty to use reasonable care in relation to black widow spiders. Because the trial court concluded there is no duty, the trial court created a categorical exception to the general rule that one must exercise due care. (See *Cabral*, *supra*, 51 Cal.4th at p. 777 [the exemption concerns the "entire *category* of negligent conduct"].) We cannot agree with such a conclusion.

It is possible that it will be found that the Mission Inn met its reasonable standard of care—that despite reasonable efforts being made, an accident occurred, which is relevant to breach. However, under the generalized foreseeability analysis that is relevant to duty, because it is reasonably foreseeable that the failure to take any action more than recording the presence of spiders could lead to harm, there is not a good reason in the foreseeability portion of the analysis to create an exception to the general rule that there is a duty to exercise reasonable care. (See *Cabral*, *supra*, 51 Cal.4th at p. 775 ["generalized sense of foreseeability pertinent to the duty question"].)

As set forth *ante*, foreseeability is not the only aspect of the duty analysis. " ' " '[The] existence [of a duty] depends upon the foreseeability of the risk and a weighing of policy considerations for and against imposition of liability.' " ' [Citation.]

---

**1** The duty analysis is not dependent on the facts of this case. (*Cabral*, *supra*, 51 Cal.4th at p. 774.) We are not asserting that the Mission Inn was overrun with spiders. We are looking at the alleged negligent conduct, and that conduct is alleged to be having done nothing in relation to black widow spiders other than recording their presence. The exact amount of spiders at issue in this case is not relevant to this particular analysis.

These policy considerations include ' "the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." [Citation.]' [Citation.] 'A duty of care will not be held to exist even as to foreseeable injuries . . . where the social utility of the activity concerned is so great, and avoidance of the injuries so burdensome to society, as to outweigh the compensatory and cost-internalization values of negligence liability.' " (*Kesner*, *supra*, 1 Cal.5th at pp. 1149-1150.)

" 'The overall policy of preventing future harm is ordinarily served, in tort law, by imposing the costs of negligent conduct upon those responsible.' [Citation.] In general, internalizing the cost of injuries caused by a particular behavior will induce changes in that behavior to make it safer. That consideration may be 'outweighed, for a category of negligent conduct, by laws or mores indicating approval of the conduct or by the undesirable consequences of allowing potential liability.' " (*Kesner*, *supra*, 1 Cal.5th at p. 1150.)

In regard to moral blame, the act of doing nothing, other than recording the spiders' presence, while one's restaurant is inhabited by black widow spiders thus exposing patrons to a risk of harm, is morally blameworthy because it is morally wrong to do nothing while exposing unknowing patrons to a risk of harm. In regard to preventing future harm, if restaurants have no liability for injuries caused by black widow spiders, then restaurants will have less incentive to protect patrons from the harm

12

posed by the spiders. By not creating an exception to the general duty rule, restaurants will be required to exercise reasonable care in relation to black widow spiders thus lessening the risk of future harm.

In regard to the burden on the restaurants, restaurants are already required to keep their premises free of vermin, which includes mice, rats, and cockroaches. (Health & Saf. Code, §§ 113939, 114259.1.) Thus, there is little burden on restaurants to keep their premises free from black widow spiders because they are already required to keep their premises free from other pests. Whatever means a restaurant uses to keep their premises free of cockroaches, such as an exterminator service, could also be used to keep the restaurant free of black widow spiders without much more effort on the part of the restaurant.

As to the cost and prevalence of insurance due to a breach, an injury related to a spider bite would likely fall under the restaurant's insurance policy for personal injuries. For example, in the instant case, the Mission Inn asserts, "Injury claims (including alleged insect bites) are covered by [the Mission Inn's] commercial general liability insurance." Personal injury insurance is widely available for acts of negligence.

The consequences to the community of not creating an exception to the general rule, i.e., retaining the general rule that restaurants must exercise reasonable care, would be that the restaurants' pest control costs and insurance costs might be marginally higher. Due to the marginal costs, there likely will not be a consequence to the community. To the extent we are incorrect and the extermination or insurance costs are

13

more than marginal, then the community might experience slightly more expensive restaurant meals.

As set forth *ante*, it is foreseeable that a restaurant owner's failure to exercise reasonable care in relation to black widow spiders on the restaurant's premises will place patrons at risk of injury due to spider bites. The burden on restaurants to exercise reasonable care is not great because restaurants are already required to have pest control measures in place for cockroaches and the insurance for injuries caused by spiders is widely available. The cost to the community will likely be nothing, but could be slightly more expensive restaurant meals. Given the foregoing analysis, we conclude there is not an overriding policy reason that justifies exempting restaurant owners from the general rule to exercise reasonable care in relation to black widow spiders on their property. Accordingly, the general rule of duty applies. (Civ. Code, § 1714, subd. (a).) Restaurant owners have a duty to exercise reasonable care in relation to black widow spiders posing a risk of injury to patrons on the restaurant premises.

The Mission Inn asserts that if a duty is imposed upon it then that will "transform the Mission Inn into an insurer of its guests' safety as respects spider bites." The Mission Inn asserts the existence of "a duty to prevent spider bites would be tantamount to imposing absolute liability upon [the] Mission Inn." Contrary to the Mission Inn's position, the Mission Inn is not strictly liable for any spider bite that occurs on its property. Reasonable care typically does not mean preventing any and all harm; it means exercising reasonably prudent caution under the circumstances. (*Hayden v. Paramount Productions* (1939) 33 Cal.App.2d 287, 293 ["Reasonable care, not

insurance against every possible accident, is the measure of liability"].) Accordingly, we are not persuaded that a duty to exercise reasonable care in relation to black widow spiders will create absolute liability for the Mission Inn.

The Mission Inn contends the foregoing discussion is "irrelevant" because the Mission Inn concedes it owes patrons a duty of reasonable care. In the Mission Inn's motion for summary judgment and respondent's brief, it has combined law and argument related to three issues: (1) the existence of a duty; (2) what the standard of care should be, e.g., reasonable care; and (3) the meaning of reasonable care in the circumstances of this particular case. For example, in the Mission Inn's respondent's brief, it writes, "This Court must decide the *existence* and the scope of Mission Inn's duty to Coyle." (Italics added.) We chose to address the substance of the issue concerning whether a duty exists because part of the Mission Inn's argument concerns the nonexistence of a duty, even if the Mission Inn did not intend to argue that issue.

## 2. *REASONABLE CARE*

"In most cases, courts have fixed no standard of care for tort liability more precise than that of a reasonably prudent person under like circumstances." (*Ramirez v. Plough, Inc.* (1993) 6 Cal.4th 539, 546-547.) This is because "[e]ach case presents different conditions and situations. What would be ordinary care in one case might be negligence in another." (*Eddy v. Stowe* (1919) 43 Cal.App. 789, 797 (*Eddy*).)

For example, in car accident cases, in some circumstances, the reasonably prudent thing is to stop the car; while in another case, under different circumstances, the reasonably prudent thing is to slow the car; yet, in a third case, under other

15

circumstances, the reasonably prudent thing is to proceed at a higher rate of speed; and in a fourth case, in different circumstances, the reasonably prudent thing is to continue at the current speed and change nothing. (*Eddy*, *supra*, 43 Cal.App. at p. 797.)

Thus, it is the jury that "has the burden of deciding not only what the facts are but what the unformulated standard is of reasonable conduct." (*Ramirez v. Plough, Inc.*, *supra*, 6 Cal.4th at p. 547.) In sum, it is the trier of fact who decides what the facts are and what reasonable care means within those facts.

The Mission Inn's evidence includes a declaration from the Mission Inn's director of property operations, who declared, "Black widow sightings at the Mission Inn are exceedingly rare. Since 2012, only two black widow sightings were reported by employees. The Mission Inn has never received a black widow report or complaint from a guest or patron." The Mission Inn's evidence reflects Coyle was allegedly injured on May 8, 2013. The Mission Inn's evidence also includes the declaration of the chief executive officer of HospitalityEducators.com, who declared black widow spiders are not "a major pest in this market."

If a jury credits the evidence offered by the Mission Inn, the jury might find that it is "exceedingly rare" for black widow spiders to be found at the Mission Inn, yet, the Mission Inn had two sightings of black widow spiders in 2012. The jury might reason that something was clearly wrong at the Mission Inn if it is "exceedingly rare" to see a black widow spider at the Mission Inn, yet two were seen within an approximately one-year period. Due to something being amiss concerning black widow spiders on the property, the jury could rationally conclude the reasonable course of conduct for the

Mission Inn was to put pest control measures in place pertaining to black widow spiders. Reasonable measures might include having an exterminator spray a pesticide targeted at black widow spiders or placing warning signs on the property. Accordingly, crediting the Mission Inn's evidence does not provide for an absolute conclusion in favor of the Mission Inn, i.e., the jury would necessarily find that reasonable care required no action in relation to controlling the population of black widows or warning guests.

To be clear, we are not stating what "reasonable care" means in this case. That determination will depend upon what evidence the trier of fact finds true. Once the trier of fact determines the facts of the case, it can decide what reasonable care means in the circumstances of this case. (*Eddy*, *supra*, 43 Cal.App. at p. 797 ["Each case presents different conditions and situations. What would be ordinary care in one case might be negligence in another"].)

The Mission Inn contends it cannot have a duty to Coyle concerning spiders unless it had knowledge of the risk of Coyle being bitten by a spider, and the Mission Inn asserts it did not have knowledge of spiders on the Mission Inn's patio. The Mission Inn's argument will be relevant when arguing the meaning of "reasonable care" to the trier of fact. The Mission Inn might present evidence that it lacked any knowledge of spiders on the patio. The Mission Inn also has evidence that its property is the size of one city block. If the trier of fact believes the Mission Inn's evidence, then the trier of fact may conclude that, because the Mission Inn is the size of one city block, a reasonably prudent person would not have taken any action related to the few spiders

17

seen on the property—that the duty of reasonable care did not require anything more than recording the spiders' presence. In other words, the jury will decide what reasonable care means after deciding the facts. At this point in the case, the Mission Inn's argument will not support summary judgment on the basis of a lack of duty.

### 3.     *PRIOR CASE FROM THIS COURT*

In *Brunelle v. Signore*, this court considered whether the owner of a private residence had a duty to prevent the plaintiff from being bitten by a brown recluse spider. (*Brunelle v. Signore* (1989) 215 Cal.App.3d 122, 125, 128 (*Brunelle*).) This court noted that the general rule is that all persons have a duty to use reasonable care to prevent injuries to others. (*Id.* at p. 128.) This court then wrote, "Whether a duty of care exists 'is a question of law to be determined on a case-by-case basis.' " (*Ibid.*)

This court concluded that the private homeowner did not have a duty to protect guests from spiders because (1) it was not generally known that brown recluse spiders were indigenous to the relevant area, (2) the homeowner did not know that brown recluse spiders were prevalent in the area of the residence, (3) the homeowner had not previously observed a brown recluse spider inside or outside the home, and (4) the spider that bit the plaintiff had not previously been seen by the homeowner or the plaintiff. This court explained that, given the foregoing circumstances, a bite by a brown recluse spider was unforeseeable and thus there was no duty. (*Brunelle, supra,* 215 Cal.App.3d at p. 129.)

18

This court then went further by writing, "Imposition of a duty even in those cases where the homeowner shared general knowledge with the public at large that a specific harmful insect was prevalent in the area but the homeowner had not seen the specific harmful insect either outside or inside his home would impose a duty on the owner or occupier of the premises that would also be unfair and against public policy. In either of these instances, the burden on the landowner would be enormous and would border on establishing an absolute liability. Further, the task of defining the duty and the measures required of the owner or occupier of private residences to meet that duty would be difficult in the extreme." (*Brunelle*, *supra*, 215 Cal.App.3d at pp. 129-130.)

This court concluded, "The law does not impose a duty of extraordinary care. Imposition of such a duty here . . . would impose an intolerable burden on home-owners and would in effect impose an absolute liability on the homeowner for injuries caused by insect or spider bites on their premises." (*Brunelle*, *supra*, 215 Cal.App.3d at p. 131.) This court affirmed the order granting summary judgment in favor of the defendant. (*Id.* at pp. 126, 131.)

In *Brunelle*, different aspects of the duty analysis were improperly mixed together. For example, this court discussed whether a duty existed (is there a duty of care), but mixed that discussion with what the standard of care should be ("[t]he law does not impose a duty of extraordinary of care"). (*Brunelle*, *supra*, 215 Cal.App.3d at pp. 127, 131.) Ideally, in that opinion, the issues would have been addressed separately: (1) generically, not dependent on the facts of the case, is there a duty of care; (2) if yes, should the usual standard of reasonable care apply; (3) if no, should the standard be

extraordinary care; and then (4) in looking at the facts of the case, if the issue is not reasonably disputed, what does reasonable or extraordinary care mean.

If, on a motion for summary judgment, the court uses the evidence to determine the facts of the case, then decides a dispute regarding what reasonable care requires, and then uses those determinations to decide if a duty exists as a matter of law, then the jury has little purpose. As our Supreme Court has explained, "To base a duty ruling on the detailed facts of a case risks usurping the jury's proper function of deciding what reasonable prudence dictates under those particular circumstances." (*Cabral*, *supra*, 51 Cal.4th at p. 774.)

In *Brunelle*, this court used the facts of the case to decide (1) what reasonable care would be, (2) why extraordinary care was not required, and (3) whether a duty existed as a matter of law. The opinion is an illustration of why courts must be careful in using the specific facts of a case when analyzing the issue of duty because one can too easily usurp the jury's role. It is the jury who must decide what reasonable care means within the facts of a case such as this.

For example, a prominent issue in the instant case, which the trier of fact will need to decide, is whether, given the size of the Mission Inn and the number of spiders reported to the Mission Inn, was the reasonably prudent thing (1) warning patrons about black widow spiders; (2) using pesticide to control the black widow population; (3) having a professional exterminator actively search the premises for black widows on a weekly, monthly, or quarterly basis; (4) having employees report spider sightings if

they happen to come across a spider while working on other tasks; or (5) some other action.[2]

The point here is that, in the instant case, the parties are disputing what reasonable care means, i.e., what was the reasonably prudent action in the circumstances. Given that dispute, and that there is evidence that could support a finding in favor of Coyle, e.g., that the spraying of pesticide or posting of warning signs was needed, it is not the role of the court to decide what reasonable care means in the circumstances of this case. It is for the jury to decide. (*Cabral*, *supra*, 51 Cal.4th at p. 774 ["the jury's proper function [is] deciding what reasonable prudence dictates under those particular circumstances"].) In sum, we do not follow the precedent of *Brunelle*.

D.    BREACH

Breach is the failure to meet the standard of care.[3] (*Johnson v. Superior Court* (2006) 143 Cal.App.4th 297, 305.) Therefore, a breach in this case would mean the Mission Inn failed to exercise reasonable care in relation to black widow spiders that

---

[2] The matter is not required to be decided by the trier of fact. For example, if the Mission Inn produces undisputed evidence that the most action any restaurant owner would reasonably take is spraying pesticide targeted at black widow spiders, and the Mission Inn produces undisputed evidence that it sprayed pesticide targeted at black widow spiders, then the matter could be resolved via summary judgment.

[3] The trial court's ruling focused on the element of duty. On appeal, the Mission Inn asserts (1) Coyle has confused breach and duty, and (2) "there are no triable issues of any material fact" and therefore "this Court may not reverse and remand for a trial of facts." The Mission Inn's argument could be understood as the Mission Inn attempting to argue all of the elements of the torts of negligence and premises liability. Therefore, in order to address the Mission Inn's concerns, we will address all the elements.

pose a risk of injury to patrons on the Mission Inn's premises. "To be entitled to summary judgment in [its] favor, [the Mission Inn was] required to present evidence that would preclude a reasonable trier of fact from finding it was more likely than not that [the Mission Inn's acts or omissions] fell below the standard of care. Only if [the Mission Inn was] successful in meeting this burden does the burden shift to [Coyle] to demonstrate the existence of a triable issue of material fact. [Citation.]" (*Ibid.*)

The Mission Inn asserts that its pest control system "surpassed the industry standard." The Mission Inn provides the declaration of the chief executive officer of HospitalityEducators.com, John J. Hogan, who attests that the Mission Inn's pest control "exceeded traditional hospitality industry standards of care." Hogan's opinion is based upon (1) reviewing three pest control contracts between the Mission Inn and pest control companies; (2) the pest control companies' Better Business Bureau records; (3) online reviews of pest control companies; (4) Web sites of other pest control companies in the market area; (5) online reviews of guests who stayed at the Mission Inn; (6) online research concerning black widow spiders in California hotels; (7) university-level textbooks concerning risk management in the hospitality industry; and (8) a telephone discussion with a hospitality industry insurance broker.

As set forth *ante*, restaurants are required to keep their premises free of vermin, which includes mice, rats, and cockroaches. (Health & Saf. Code, §§ 113939, 114259.1.) When Hogan declares that the Mission Inn's pest control exceeded industry standards, it is unclear to what pests he is referring. It is possible the Mission Inn had exceptional cockroach control, but no measures in place for spiders.

22

As examples: (1) a pest control receipt dated March 16 or 18, 2013, reflects the Mission Inn was treated for cockroaches, rats, and mice; (2) a pest control receipt dated April 15, 2013, reflects the Mission Inn was treated for cockroaches, rats, and mice; and (3) a pest control receipt dated May 16, 2013, reflects the Mission Inn was treated for cockroaches. It is unclear what, if anything, the Mission Inn did to control the population of black widow spiders.

The Mission Inn's director of property operations, Ronald Monteiro, declared that the Mission Inn kept a log of the pests reported to have been seen on the premises. The log reflects that, since 2012, two black widow spiders were reported. The log book is given to the Mission Inn's pest control contractor to review.[4] It is unclear from this evidence what, if anything, the exterminator recommended to the Mission Inn about the black widow spiders. It is possible the exterminator recommended the entire hotel be sprayed with a pesticide to exterminate black widows, and the hotel decided not to follow the recommendation.

Thus, the hotel had pest control procedures in place, but it is unclear what, if anything, the hotel did concerning spiders. If a jury finds that the Mission Inn took no action in relation to controlling the population of black widow spiders or warning guests, the jury might conclude those omissions constitute a failure to meet the standard

[4] Our review of the logbook reflects that there were three black widow sightings prior to Coyle's alleged injury: (1) July 1, 2012; (2) July 17, 2012; and (3) July 19, 2012. There were also various generic spider sightings, without any particular type of spider being identified, from March 2012 to May 8, 2013. After Coyle's injury, black widow spiders were sighted at the Mission Inn on August 28, 2013, and September 16 or 18, 2013.

of reasonable care. Accordingly, the Mission Inn's evidence does not preclude a finding in favor of Coyle on the element of breach.

### E.    CAUSATION

The element of causation requires there to be a connection between the defendant's breach and the plaintiff's injury. (*State Dept. of Hospitals v. Superior Court* (2015) 61 Cal.4th 339, 358; *Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 773.) Courts have found untreated bedbug infestations to be the cause of injuries resulting from bedbug bites. (*Mathias v. Accor Economy Lodging, Inc.* (7th Cir. 2003) 347 F.3d 672, 674 [gross negligence "was amply shown"]; *Downey v. Bob's Discount Furniture Holdings, Inc.* (1st Cir. 2011) 633 F.3d 1, 10 ["a rational jury . . . could have drawn an inference of causation"].)

In support of its motion for summary judgment, the Mission Inn submitted a partial transcript of Coyle's deposition. Coyle testified that, while at the Mission Inn, she "felt something really bad happen to [her] shoulder blade." Coyle's "muscle[s] started to spasm almost immediately." Coyle told her lunch companion, "'I think I just got bitten by something.'" The next morning, Coyle's upper body was numb, later she had numbness in her hips, and then she could not move her legs or arms. At the hospital, doctors diagnosed Coyle with a toxic spider bite. Coyle believed the bite on her back matched photographs of black widow bites on the Center for Disease Control and Prevention's Web site.

The evidence submitted by the Mission Inn reflects Coyle was bitten at the Mission Inn, and the next day she suffered paralysis due to a spider bite. A trier of fact could conclude from this evidence that, if the Mission Inn breached its duty, then that breach caused Coyle to suffer injuries. In other words, if the Mission Inn did nothing to (1) control the black widow population on its premises, or (2) warn patrons about black widows on its premises, then a trier of fact might find those omissions resulted in Coyle being bitten because the Mission Inn unreasonably permitted its patrons to be exposed to black widow spiders. In sum, the Mission Inn's evidence does not preclude a finding in favor of Coyle on the element of causation.

F.     DAMAGES

"Generally, damages are assessed as compensation for losses, injury or detriment proximately caused by defendant's tortious conduct." (*Breese v. Price* (1981) 29 Cal.3d 923, 927.)

The Mission Inn submitted a partial transcript of Coyle's deposition. Coyle testified that she "couldn't function at all with [her] legs or [her] arms" after being bitten. Coyle was taken to the hospital where she was diagnosed with a toxic spider bite. Coyle was admitted to the hospital. It can be inferred from this evidence that Coyle suffered an injury in the form of a spider bite and had medical expenses related to that injury. Accordingly, the Mission Inn's evidence does not preclude a finding in favor of Coyle on damages.

G.    CONCLUSION

In sum, the Mission Inn had a duty to exercise reasonable care in relation to black widow spiders that pose a risk of injury to patrons on its premises.  (Civ. Code, § 1714, subd. (a).)  If the trier of fact finds the Mission Inn's evidence to be true, it could find that (1) a reasonable person would have (a) warned patrons about the risk of black widow spiders at the property, or (b) put pest control measures in place for black widow spiders, such as pesticide being sprayed; (2) the Mission Inn did nothing with respect to black widow spiders, reflecting breach; (3) Coyle was bitten by a black widow spider at the Mission Inn, reflecting causation; and (4) Coyle suffered pain and incurred medical expenses as a result of the spider bite, reflecting damages.  Therefore, because the Mission Inn's motion for summary judgment does not preclude a finding in favor of Coyle, we conclude the trial court erred by granting summary judgment.

H.    EVIDENTIARY OBJECTIONS

Coyle contends the trial court erred by sustaining some of the Mission Inn's evidentiary objections to Coyle's evidence.  Our analysis of the summary judgment issue is based upon the evidence submitted by the Mission Inn.  The burden did not shift to Coyle, therefore we did not rely upon the evidence submitted by Coyle.  As a result, any error related to the evidentiary objections is not relevant to resolving the issue on appeal.  Therefore, we decline to address the alleged errors in the trial court's evidentiary rulings.  (See *Garcia v. W & W Community Development, Inc.* (2010) 186 Cal.App.4th 1038, 1044, fn. 3 [appellate court declining to rule on objections to evidence when the evidence was not used in deciding the issue on appeal].)

## DISPOSITION

The judgment of dismissal and order granting summary judgment are reversed.

Appellant Michele Coyle is awarded her costs on appeal.

CERTIFIED FOR PUBLICATION

MILLER
Acting P. J.

We concur:

CODRINGTON
J.

FIELDS
J.