Filed 1/5/24  Stani v. Shamrock Foods CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

|  |  |
|---|---|
| LESDEK STANI et al., | |
| Plaintiffs and Appellants, | E079098 |
| v. | (Super.Ct.No. RIC2003259) |
| SHAMROCK FOODS, INC., | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of Riverside County.  Carol A. Greene, Judge.
Affirmed.

Stoll, Nussbaum & Polakov, Robert J. Stoll, Jr., and Robert J. Stoll, III, for
Plaintiffs and Appellants.

Grimm, Vranjes, Greer, Stephan & Bridgman, Greg Stephan, Stephen P.
Conching; Bradley & Gmelich, and Peter Hugh Crossin, for Defendant and Respondent.

1

Plaintiff Lesdek Stani was struck by a car while he was standing on a public street adjacent to a warehouse and distribution facility operated by defendant Shamrock Foods, Inc. (Shamrock). Lesdek and his wife Malgorzata Stani (collectively, the Stanis) sued Shamrock for premises liability, alleging that Shamrock had a duty to maintain the public roadway in a reasonably safe condition.[1] The Stanis appeal from the summary judgment entered in favor of Shamrock. They argue that because Shamrock moved for summary judgment on the issue of duty alone, the trial court erred by granting summary judgment on the ground that there existed no triable issue of material fact on causation. Shamrock argues that even if the trial court erred by basing its ruling on causation, the judgment should still be affirmed on the basis of duty under *Vasilenko v. Grace Family Church* (2017) 3 Cal.5th 1077 (*Vasilenko*) and *Issakhani v. Shadow Glen Homeowners Assn., Inc.* (2021) 63 Cal.App.5th 917, 924 (*Issakhani*). We agree with Shamrock and therefore affirm the judgment.

BACKGROUND[2]

Shamrock operates a distribution facility in Eastvale, California, from which it supplies customers in the restaurant, retail, and hospitality industries with various food-

---

[1] We refer to Lesdek by his first name because the Stanis have the same last name. No disrespect is intended.

[2] We accept all undisputed facts in the parties' separate statements that are supported by the evidence. (*Doe v. California Lutheran High School Assn.* (2009) 170 Cal.App.4th 828, 830.) We also accept all facts in the parties' separate statements that were disputed, "to the extent that (1) there is evidence to support them (Code Civ. Proc., § 437c, subd. (b)(1)), and (2) there is no evidence to support the dispute (Code Civ. Proc., § 437c, subd. (b)(3))." (*Id.* at pp. 830-831.) We also consider other facts described in the

related products.  The facility is located on Riverside Drive, with Sharp Street bordering the east side of Shamrock's facility.  Sharp Street is a two-way roadway with one lane of traffic in each direction, a center median, and room for parking on both sides of the street.

Shamrock does not display any signs indicating that any portion of Sharp Street is Shamrock's property.  Shamrock has not constructed or maintained any gates, barriers, or traffic-controlling devices on Sharp Street that would prohibit driving on Sharp Street or parking against the curb.  No one employed or hired by Shamrock controls traffic on Sharp Street.

Third party trucking companies deliver goods to the Shamrock facility.  Vendors making deliveries at Shamrock are required to have a prescheduled appointment.  In May 2020, Shamrock's receiving hours were from 2:00 a.m. to 10:00 a.m., while its shipping hours were from 10:00 a.m. to 2:00 a.m.  Third party truck drivers arriving at Shamrock check in with a guard at the entrance either by telephone or by walking up to the guard.  Such drivers routinely arrive hours earlier than their scheduled appointments.  Third party carriers were not allowed to park in Shamrock's warehouse parking lot, and there was no other designated parking area for them at the facility.

Stanis' separate statement and supported by the evidence if Shamrock did not indicate whether the fact was disputed but instead stated that the fact was "not material" to disposition of the motion.  We also consider all of the relevant evidence to which the parties objected if the trial court did not expressly rule on the objection.  We presume that the court implicitly overruled any such objection and considered the evidence.  (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 534 (*Reid*).)

A sign at the check-in area at Shamrock reads: "Outside carriers MUST be parked on the street to check in!!"[3] (Underlining omitted.) Guards were trained to instruct drivers who drove onto the property earlier than their scheduled appointment to park on the surrounding public streets or at a nearby truck stop. Shamrock did not require third party truck drivers to park on Sharp Street before making deliveries.

In May 2020, Shamrock had approximately 180 of its own tractor-trailer trucks making deliveries out of the Eastvale facility. Shamrock's trucks parked in Shamrock's warehouse parking lot. Around 110 of Shamrock's trucks made deliveries every day. In addition, "Shamrock trucks routinely exit[ed] Shamrock's facility and park[ed] illegally in the center turn lane on Sharp Street; often the drivers [would] leave their trucks unattended and illegally parked in the center lane while they go into Shamrock's building offices." A transportation manager at Shamrock saw Shamrock's drivers do this approximately two to five times per day.

Around 7:00 p.m. on May 3, 2020, Lesdek arrived at the Shamrock facility to make a delivery. Lesdek was driving a JKC truck and had not previously delivered anything to Shamrock. Lesdek stopped and parked in the northbound lane on Sharp Street. Another JKC truck was parked along the curb on the southbound side of the street. Lesdek exited his truck and crossed the street to speak with the driver of the other

---

**3**     Shamrock objected to admission of the exhibit containing a photograph of the check-in sign, but the trial court did not expressly rule on it. We therefore presume that the court implicitly overruled the objection and considered the evidence. (*Reid*, *supra*, 50 Cal.4th at p. 534.)

truck about her experience delivering at Shamrock. While talking to the other driver, Lesdek stood in the street in the southbound lane of traffic, "very close" to the door of the other driver's truck.

Travis Graves works as a delivery driver at Shamrock. When Lesdek was standing in the street talking with the other driver, Graves was driving south on Sharp Street. Graves was going to work. Graves saw Lesdek get out of the truck and also saw Lesdek standing in the street next to the other truck. Graves was confident that he could pass Lesdek "without hitting him." Graves's car instead struck Lesdek when Graves attempted to pass.

In August 2020, the Stanis filed a lawsuit against Shamrock and Graves, alleging numerous claims arising from injuries Lesdek sustained in the collision. The Stanis alleged negligence causes of action against Graves and Shamrock based on Graves's conduct, a premises liability claim against Shamrock, and a loss of consortium claim for Lesdek's wife. The Stanis alleged that Shamrock created a hazard on Sharp Street by using it as a parking lot and staging area for third party carriers, and they also alleged that Shamrock exercised dominion and control over Sharp Street because Shamrock had complete control over parking on the street. The Stanis additionally alleged that the hazardous parking condition on Sharp Street was the result of Shamrock's facility's lack of adequate onsite parking for third party carriers.

Shamrock moved for summary judgment or alternatively summary adjudication on the following two grounds:  (1) The collision occurred on a public street that Shamrock did not treat as private property, so Shamrock had no "duty to maintain the publicly controlled land in a reasonably safe condition," and (2) Graves was not acting within the course and scope of his employment, so Shamrock was not vicariously liable for his conduct.  (Shamrock's vicarious liability argument is not at issue in this appeal, so we do not address it further.)  As to the issue of duty, Shamrock argued that it did not owe Lesdek a duty to prevent injury on the public street because it had not created a hazard on Sharp Street, had not engaged in any affirmative action to treat Sharp Street as private property, and had no duty to provide onsite parking to invitees.  Shamrock argued that summary judgment was mandated under the holdings of *Vasilenko*, *supra*, 3 Cal.5th 1077, and *Issakhani*, *supra*, 63 Cal.App.5th 917, that "a landowner owes no duty to provide onsite parking to invitees."  (Underlining omitted.)  The Stanis opposed the motion, arguing that there were disputed issues of material fact as to whether Shamrock had created a dangerous condition on Sharp Street by not providing adequate onsite parking for its business enterprise, causing trucks to park on Sharp Street in a manner that made the roadway unsafe.

The trial court issued a tentative ruling indicating that it was inclined to grant the motion.  In the tentative ruling, the court noted that the parties disputed whether "Shamrock created the situation on Sharp Street" and whether "creation of the situation increased the danger to" Lesdek.  The court assumed for the sake of argument that

6

Shamrock had created the situation of delivery trucks parking on Sharp Street. The court concluded that the Stanis "fail[ed] to demonstrate the closeness between that and the actual accident," reasoning that there were no triable issues of fact as to whether the parking of trucks on Sharp Street caused Graves to hit Lesdek.

At the hearing on the motion, the Stanis' counsel argued that Shamrock had not moved for summary judgment on the issue of causation, so they were blindsided by the court's tentative ruling. The Stanis argued that the ruling was incorrect in any event because there existed a triable issue of material fact as to whether "the dangerous condition that [the Stanis] allege Shamrock created was a direct cause of the injuries to" Lesdek. The court adopted the tentative ruling as its final ruling and granted summary judgment in favor of Shamrock.

STANDARD OF REVIEW

The trial court may grant summary judgment if there is no triable issue of material fact and the issues raised by the pleadings may be decided as a matter of law. (Code Civ. Proc., § 437c, subds. (c), (f)(2); *Biancalana v. T.D. Service Co.* (2013) 56 Cal.4th 807, 813.) A moving defendant must show that one or more elements of the challenged cause of action cannot be established or that there is a complete defense to the cause of action. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849 (*Aguilar*).)

7

Once the moving defendant has carried its initial burden, the burden shifts to the plaintiff to show a triable issue of material fact with respect to the cause of action or defense.  (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar*, *supra*, 25 Cal.4th at p. 849.)  The court must consider all of the evidence and the reasonable inferences from it in the light most favorable to the nonmoving party.  (*Aguilar*, at p. 843.)  "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof."  (*Id.* at p. 850.)

We review summary judgment orders de novo and apply the same legal standard as the trial court.  (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460.)  We independently examine the record to determine whether there are triable issues of material fact and whether the moving party is entitled to summary judgment as a matter of law.  (*Ibid.*)  "We exercise our independent judgment as to the legal effect of the undisputed facts [citation] and must affirm on any ground supported by the record."  (*Jimenez v. County of Los Angeles* (2005) 130 Cal.App.4th 133, 140 (*Jimenez*).)

## DISCUSSION

The Stanis contend that the trial court erred by granting summary judgment on the basis of lack of causation, because Shamrock did not move for summary judgment on that ground.  Shamrock counters that even if the Stanis' contention is correct, we should still affirm the judgment because Shamrock moved for summary judgment on a meritorious ground, namely, that Shamrock did not owe any duty of care to prevent

8

injury on the public roadway abutting its business.  The Stanis' reply brief contains no response to Shamrock's argument, and we conclude that the argument is sound.[4] (*Jimenez*, *supra*, 130 Cal.App.4th at p. 140.)

To prevail on a premises liability cause of action, a plaintiff must establish "a legal duty of care, breach of that duty, and proximate cause resulting in injury."  (*Kesner v. Superior Court* (2016) 1 Cal.5th 1132, 1158.)  "A duty of care exists when one person has a legal obligation to prevent harm to another person, such that breach of that obligation can give rise to liability."  (*Issakhani*, *supra*, 63 Cal.App.5th at p. 924.)  Whether a duty exists is a question of law that we independently review.  (*Vasilenko*, *supra*, 3 Cal.5th at p. 1083; *Coyle v. Historic Mission Inn Corp.* (2018) 24 Cal.App.5th 627, 634.)

Owners and occupiers of property generally owe "a duty 'to maintain land in their possession and control in a reasonably safe condition.'"  (*Lopez v. City of Los Angeles* (2020) 55 Cal.App.5th 244, 254-255.)  ("For conciseness, we refer to those who 'own, possess, or control' such premises as 'landowners,' regardless of their legal title over the property."  (*Vasilenko*, *supra*, 3 Cal.5th at p. 1084.).)  That rule is consistent with the general principle codified in Civil Code section 1714 that "[e]veryone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another

---

[4]     The Stanis also argue that the trial court erred by (1) not considering Graves's postdeposition declaration that purportedly demonstrates that an issue of material fact exists concerning whether Shamrock caused the collision, and (2) not granting the Stanis a continuance before granting summary judgment on the issue of causation to allow them to properly rebut that issue.  Because we do not affirm the trial court's ruling on the basis of lack of causation, we need not address those arguments.

9

by his or her want of ordinary care or skill in the management of his or her property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself or herself." (*Id.*, subd. (a); *Southern California Gas Leak Cases* (2019) 7 Cal.5th 391, 398 [people generally "owe a duty of care to avoid causing harm to others and . . . are thus usually liable for injuries their negligence inflicts"]; *Kuciemba v. Victory Woodworks, Inc.* (2023) 14 Cal.5th 993, 1016.) Exceptions to the general duty of care articulated in Civil Code section 1714 "can be recognized when supported by compelling policy considerations." (*Kuciemba*, *supra*, at p. 1021; *Rowland v. Christian* (1968) 69 Cal.2d 108, 113 [identifying policy considerations that could justify departure from general rule of duty].)

Shamrock argued in its motion for summary judgment that this case is controlled by *Vasilenko*, *supra*, 3 Cal.5th 1077 and *Issakhani*, *supra*, 63 Cal.App.5th 917. We agree. Under *Vasilenko* and *Issakhani*, Shamrock did not owe Lesdek any duty to protect him from the obvious dangers of the public roadway.

In *Vasilenko*, a church attendee was struck by a car when crossing a five-lane street between the church and the church's offsite overflow parking lot. (*Vasilenko*, *supra*, 3 Cal.5th at p. 1082.) The plaintiff had traveled to the church in order to attend a seminar. (*Ibid.*) "[A] church member volunteering as a parking attendant informed him that the main lot was full and told him to park at the swim school lot across the street." (*Ibid.*) The swim school allowed the church to use its parking lot for overflow parking when the church's primary lot was full. (*Ibid.*) The attendee sued the church for

10

negligence, alleging that the church "created a foreseeable risk of harm by maintaining an overflow parking lot in a location that required invitees to cross [a public street], and that the [c]hurch was negligent in failing to protect against that risk." (*Ibid*.)  The church "did not control the public street and did not create the dangers on the street." (*Id*. at p. 1081.)  *Vasilenko* explained that since "'the general duty to take ordinary care in the conduct of one's activities' applies to choosing the location of a parking lot for one's invitees," the issue presented was "'whether a categorical exception to that general rule should be made' exempting those who own, possess, or control premises abutting a public street from liability to invitees for placing a parking lot in a location that requires invitees to cross the public street." (*Id.* at p. 1084.)

*Vasilenko* held that in general "a landowner who does no more than site and maintain a parking lot that requires invitees to cross a public street to reach the landowner's premises does not owe a duty to protect those invitees from the obvious dangers of the public street." (*Vasilenko*, *supra*, 3 Cal.5th at p. 1092.)  *Vasilenko* explained that the holding is consistent with the principle that "landowners are not required to provide parking for their invitees." (*Id.* at p. 1090.)  Applying that holding, *Vasilenko* concluded that the church did not owe the plaintiff a "duty to protect him from the obvious dangers of crossing" the street, given that the church had not "done anything more than site and maintain a parking lot that requires its invitees to cross a public street." (*Id.* at p. 1097.)

*Issakhani* involved a similar situation. There, a pedestrian was struck by a car while jaywalking across a five-lane street at night. (*Issakhani*, *supra*, 63 Cal.App.5th at p. 922.) The pedestrian was crossing the street to go to a condominium complex, where a friend lived. (*Ibid.*) Before parking on the street, the visitor had attempted to park in the condominium complex's parking lot but did not find an available parking spot. (*Ibid.*) The parking lot had 170 parking spaces, but only six of them were designated as "'Visitor' spaces," fewer than the municipal code required. (*Id.* at p. 923.) After being struck, the pedestrian sued the owner of the condominium complex for negligence and premises liability, alleging that the complex's failure to provide the number of visitor parking spaces mandated by the local ordinance created a foreseeable risk of harm for guests of the condominium. (*Ibid.*) The trial court granted summary judgment in favor of the complex's owner, finding that the owner did not owe the plaintiff a duty of care. (*Ibid.*)

As in *Vasilenko*, *supra*, 3 Cal.5th 1077, the issue presented in *Issakhani* was whether "the landowner's common law duty of care entail[ed] protecting an invitee against injuries incurred offsite due to an alleged deficiency on the landowner's property." (*Issakhani*, *supra*, 63 Cal.App.5th at p. 925.) *Issakhani* concluded "that a landowner's common law duty of care does not encompass a duty to provide onsite parking for invitees in order to protect them from traffic accidents occurring offsite as they travel to the premises." (*Id*. at p. 926.) *Issakhani* reasoned: "*Vasilenko* forecloses imposing a duty upon a landowner to provide invitees with onsite parking in order to

12

protect them from the dangers of crossing nearby streets to get to the property. If, as [the] plaintiff contends, a landowner had a duty to provide onsite parking to invitees, the landowner in *Vasilenko* would have automatically breached that duty when it directed its invitees to offsite parking facilities; there would have accordingly been no reason for *Vasilenko* to examine whether, under the *Rowland* factors, a landowner had a duty to safely shepherd those invitees onto its property from those facilities." (*Ibid.*) We agree with and adopt that reasoning.

*Vasilenko* and *Issakhani* are directly on point. Shamrock did not owe a duty of care to provide onsite parking to invitees. (*Vasilenko*, *supra*, 3 Cal.5th at p. 1090.) Under *Vasilenko*, Shamrock's duty of care to maintain its premises in a reasonably safe condition for invitees also does not encompass a duty to protect "invitees from the obvious dangers of the public street" abutting its premises, as long as Shamrock does not do anything to "obscure[] or magnif[y] the risk of harm posed by the street." (*Id.* at p. 1092; *Issakhani*, *supra*, 63 Cal.App.5th at p. 926.) Here, the undisputed facts establish that Stani was injured by an obvious danger of a public roadway. He was standing in the roadway and was struck by a vehicle driven by a driver who could see him. There is no evidence that Shamrock obscured or magnified that obvious danger of Sharp Street in any way. We accordingly conclude that under *Vasilenko* Shamrock did not owe Lesdek any duty of care to prevent injury from the obvious dangers of the public roadway abutting its property.

The Stanis argued in the trial court that *Issakhani*, *supra*, 63 Cal.App.5th 917 and *Vasilenko*, *supra*, 3 Cal.5th 1077 were distinguishable because "Shamrock did not just have a lack of parking" but instead "actively mandated third-party trucks delivering goods to its warehouse to park along Sharp Street and allowed its own trucks to park along and illegally in the middle of Sharp Street." (Underlining omitted.) The argument is foreclosed by *Vasilenko*. There, the volunteer parking lot attendant directed the plaintiff to park at the overflow parking lot across the street. (*Vasilenko*, at p. 1082.) There is no meaningful distinction between the instructions in *Vasilenko* to park in a parking lot across the street and Shamrock's instructions to third party truck drivers to park offsite while awaiting their appointments or on the street while checking in. In any event, the condition leading to injury in this case was not the result of Shamrock's lack of onsite parking for third party truck drivers or the instructions to park elsewhere. Instead, the injury-causing condition here was an obvious danger inherent in any public street, namely, the danger of being struck by a vehicle while standing in the street and visible to the car's driver. There is no evidence that Shamrock did anything to obscure or magnify that obvious danger of the public roadway.

For all of the foregoing reasons, we conclude that *Vasilenko*, *supra*, 3 Cal.5th 1077, is controlling and that Shamrock accordingly did not owe a duty of care to Lesdek to prevent injuries from the obvious dangers of the public roadway bordering its premises by providing onsite parking. We therefore affirm the trial court's grant of summary judgment.

DISPOSITION

The judgment is affirmed.  Shamrock shall recover its costs of appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

<u>MENETREZ</u>
J.

We concur:


<u>CODRINGTON</u>
Acting P. J.


<u>FIELDS</u>
J.